# UNION TRUST COMPANY *v.* MORRISON.·

APPEAL FROM THE CIRCUIT COURT. OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF ILLINOIS.

No. 64. Argued and submitted November 10, 1887.—Decided April 2, 1888.

The entire rolling stock of a railway company in Illinois was covered, as
well as all its other property, by a mortgage to trustees to secure an
issue of outstanding bonds. A judgment creditor of the company being
about to levy upon some of the rolling stock, the company filed a bill
in equity to restrain the levy and to set aside the judgment as obtained
by fraud, and an injunction issued restraining the creditor from making
the levy, a bond with surety being first filed, conditioned to pay the judg-
ment debt if the injunction should be dissolved. The surety in that
bond took as security a chattel mortgage of four locomotives. Proceed-,
ings were then taken for the foreclosure of the mortgage, and a receiver
of all the property covered by the mortgage was appointed. Several suits
against the company were then pending in which appeal had been taken
and appeal bonds given, in order to protect the rolling stock. The re-
ceiver then suggested, making special mention of the above recited case,
that the sureties should be protected in the event of adverse decisions,
and the court authorized him in his discretion to protect such sureties as
ought to be protected, by reason of the protection afforded to the property
and assets of the company, by the giving of their bonds; and an order
was made that all persons having claims or liens against the property or
its proceeds·should file intervening petitions on or before a day named.
The surety in the injunction bond intervened within the time fixed, set-
ting forth the facts, and that judgment had been recorded against him,
and asking to ·be protected from the consequences of signing the bond, as
the receiver had not been able to pay the debt of the judgment creditor.
The property covered by the mortgage was then sold, and purchased by
persons representing the bondholders, and it was referred to a master to
. report upon the intervening claims. The trustee and the receiver ob-
jected to the allowance of the claims of the surety on the injunction bond,
on the ground that the execution in the original suit could not become a
lien upon the property as against the mortgage bondholders, and on·the
further ground that the surety had not paid the judgment debt. The
surety then paid the judgment debt, and filed a supplemental petition,
setting that fact forth and repeating this original application, but the
master rejected the claim on the ground that the payment was not made
when he filed his original claim, nor until the time had expired for claims
to be presented. *Held:*

(1) That the claim was presented in time; and that although the surety had not paid the judgment when the claim was presented, he was entitled in equity to be protected from making the payment;

(2) That the purchasers at the foreclosure sale, having been represented in the foreclosure proceedings by the trustees of the mortgage were bound by whatever bound the trustees, including the orders of the court respecting the paramount liens of the intervening claimants;

(3) That as, until the mortgage was enforced by entry or judicial claim, the personal property of the company was subject to its disposal in the ordinary course of its business, and to be seized and taken on execution for its debts, subject, however, to the contentions of the mortgage trustees, the act of the surety on the injunction bond had operated to keep the property together, and to keep up the railroad as a going concern;

(4) That the taking of the chattel mortgage by him showed that he intended to look to the property, and not alone to the personal security of the company;

(5) That the evidence referred to in the opinion showed that the receiver received moneys from which he might have paid the judgment debt;

(6) That the purchasers of the property accepted a deed, executed under order of court, in which they recognized the right of the surety as an intervenor.

The court does not intend, in this case, to decide anything in conflict with *Burnham v. Bowen*, 111 U. S. 776, and only decides that this claim, being based upon a *bona fide* effort by the intervenor to preserve the fund from spoliation after the mortgage debt was in arrear and the right to reduce to possession had accrued, the claimant can pursue earnings which had been appropriated to the purchase of property that had been added to the fund.

The action of the intervenor not being taken for the purpose of being subrogated to the questionable rights of a judgment creditor, the court expresses no opinion upon the rights of an execution creditor, levying on the personal property of a railroad company in Illinois, as against those of a mortgagee.

THE court stated the case as follows:

This case grows out of the foreclosure of a mortgage given by the Cairo and St. Louis Railroad Company on the 2d day of October, 1871, to the Union Trust Company, to secure the payment of two thousand five hundred bonds of one thousand dollars each, with interest semi-annually. Morrison, the appellee, intervened in the proceedings, by petition, claiming a lien on the property mortgaged, by reason of having become liable as surety on an injunction bond given to obtain an injunction

to prevent an execution sale of a portion thereof. The court below by a decree dated May 4th, 1884, allowed his claim, amounting to the sum of $15,352.19, with interest from May 20th, 1882. The purchasers at the foreclosure sale (who purchased on behalf of the bondholders), having transferred the property to the St. Louis and Cairo Railroad Company (organized for that purpose), said company was allowed to become a party to the proceedings for the purpose of appealing from the decree; and did appeal from the same in connection with the Union Trust Company. The case is now before us on that appeal.

The facts necessary to be understood in the determination of the case are as follows:

The Cairo and St. Louis Railroad Company was a corporation of Illinois owning and operating a railroad in that State, extending from Cairo to a point opposite St. Louis. The mortgage referred to purported to convey and embrace all the property and assets of the company, real, personal, and mixed, then held and owned, or thereafter to be acquired, and the tolls, incomes, rents, issues, and profits thereof; and it contained provisions authorizing the mortgage trustee (the Union Trust Company) to take possession of said property and assets in case of default, for a certain period of time, in the payment of interest, or of the instalments of a sinking fund provided for.; and gave said trustee power, on such default, to declare the principal due. The railroad company made default in the payment of interest in October, 1873, and at every subsequent period of payment, and never paid any instalments of the sinking fund.

Meantime, the company was harassed by suits, and, amongst others, one Henry Holbrook, on the 26th of November, 1872, recovered a judgment against it in the Circuit Court of St. Clair County, Illinois, for the sum of $9500, besides costs. Execution was issued, but not levied. But in October, 1874, an *alias* execution was issued, and the sheriff of St. Clair County threatened to levy upon the rolling stock of the company, a great part of which was in that county, opposite St. Louis. The company, believing the judgment to have been fraudulently

and wrongfully obtained, filed a bill in equity in the St.. Clair Circuit Court to enjoin Holbrook from proceeding to its collection. An injunction was granted accordingly on the 30th of December, 1874; but only upon the condition that the company should give an injunction bond, with sureties, for the payment of judgment and costs, if the injunction should be dissolved. Morrison, at the request of the company, executed such bond as surety. In February, 1877, the bill for injunction was dismissed, and in June, 1879, the decree of dismissal was affirmed by the Supreme Court of Illinois, and the injunction was definitively dissolved. Thereupon Holbrook sued Morrison on the injunction bond, and on the 30th of September, 1880, recovered judgment against him for the sum of $13,965.

Prior to this time, in November, 1877, the Trust Company declared the principal of the bonds due, and filed a bill in the court below to have a receiver appointed and the mortgage foreclosed. Henry W. Smithers was appointed receiver, with power to operate the road and equip it and keep it in repair, and to pay all amounts due and owing by the railroad company for labor or supplies that might have accrued in the operation and maintenance of the railroad property within six months immediately preceding. The receiver, on taking possession of the property, found a number of suits against the company pending on appeal, and claims for protection on the part of those who had become sureties on the appeal bonds; and on the 29th of December, 1877, he presented a petition to the court, asking its advice and instruction in regard to said bonds, and whether he should protect the sureties in the event of adverse decisions in any of the cases. He stated the fact that such appeal bonds were given by some of the officers of said railroad company, with others as sureties, in order to protect the rolling stock or other personal property of said railroad company from levy or sale under execution pending the determination of the appeals; in each of which cases execution on the judgment or decree was either levied on personal property of said railroad company or the levy thereof threatened at the time of taking the appeal and giving the bond. He mentioned the Holbrook case in particular, which was then pending before

the Supreme Court of Illinois on appeal, and called attention to the injunction bond given in that case; and he expressed his concurrence in the statement of the sureties generally, that they had become such on the assurance of being protected, and that their action had been to the benefit of all parties interested in the property of the company, since, in default of payment, it would have been sacrificed to meet the demands. The court, on consideration, made a decree authorizing the receiver, in his discretion, to prosecute or defend the appeals and cases, according as the interests of the receivership should in his judgment be best promoted; and to protect such sureties as in his judgment ought to be protected in equity and good conscience by reason of the protection afforded to the property and assets of the company by means of the giving of such bonds. And, for the purposes of this decree, the receiver was authorized to use and pay out any moneys coming into his hands as such receiver, over and above expenses for operation and repairs. The receiver, for alleged lack of funds coming into his hands, failed to protect any sureties except two, one Rosborough and one Pellet.

On the 16th of May, 1881, a decree was made in the foreclosure suit, ascertaining the amount due on the bonds and coupons to be $4,301,157.53, and directing a sale of the mortgaged premises to satisfy the same. The decree required all persons having claims or liens against the railroad and property, or against the proceeds of the sale thereof, to file intervening petitions on or before the 1st day of July, 1881.

In accordance with this order, Morrison, on the 30th day of June, 1881, filed his intervening petition, setting up the facts respecting his becoming surety on the injunction bond, the preservation of the rolling stock by means thereof, the proceedings in the case, and the proceedings against himself on the bond, resulting in the judgment rendered against him on September 30th, 1880. He also set out the copy of a mortgage on four locomotive engines given to him by the railroad company in June, 1875, by way of indemnity against his liability on the injunction bond; which mortgage was duly recorded in the clerk's office for St. Clair

County, but was never enforced by him; he stating the fact to be, that the said company and the receiver had used the said locomotive engines continuously since the execution of the said mortgage, and the same were then in the possession of the receiver, and were to be sold at the sale of the property under the said decree of foreclosure. He further set out a copy of the petition presented to the court by the receiver, asking for instructions as before stated, and bringing to the notice of the court the Holbrook judgment and appeal and the injunction bond given in that case. He further stated that the receiver, since his appointment, had not been able, out of the earnings of the railroad, to pay the judgment of Holbrook, and thus protect the sureties on the injunction bond. His petition closed with a prayer for a decree that he should be fully protected from all the consequences of signing the said bond, and from the judgment recovered against him and for further relief.

On the 5th of July, 1881, an order was made declaring that no claim presented or filed after the 1st of July, 1881, should be received or filed; and that all claims not so filed on or before that date should be forever barred from any benefit under the decree, or from the property, or the proceeds of its sale.

On the 14th of July, 1881, the railroad and other property covered by the mortgage were duly sold in accordance with the decree of May 16th, and Josiah A. Horsey and Charles J. Canda, on behalf of the bondholders, became the purchasers for the sum of $4,000,000; which sale was, on the same day, ratified by the court, and an order was made referring to a special master, Frank H. Jones, all the intervening claims and petitions filed in the cause, to take proof and report his conclusions of fact and law thereon for the consideration of the court; and to give notice to the parties of the time and place of taking testimony.

On the 1st of August, 1881, an order was made referring it to a master to examine and report the amount of receiver's certificates remaining unpaid, and of all claims against the receivership, or railroad assets in the receiver's possession, as shown by intervening petitions or claims filed in the cause before July 1st, for labor, supplies or other claims; and whether

there was sufficient showing in the several cases to warrant funds to be paid into court to cover the same: also the probable amount of costs and fees. The object of this order was to ascertain how much money the purchasers should be required to pay into court, and how much of their bid might be paid in bonds.

On the 19th of August, 1881, the Union Trust Company and the receiver filed a joint answer to Morrison's petition of intervention, in which all its material statements were admitted; but whilst admitting that the sheriff of St. Clair County did threaten to levy on the railroad company's locomotives and rolling stock they denied that, as against the bondholders and the Union Trust Company mortgage, the execution was a lien on said locomotives and stock paramount to that of the mortgage; they also denied that the chattel mortgage alleged to have been given by the railroad company upon certain locomotives for the purpose of securing the sureties on the injunction bond, could have any effect or create any lien on said property paramount to that of the Union Trust Company mortgage. The respondents admitted that the railroad company and the receiver had continually used the engines and property owned by the company in 1875; but whether they were the same which were included in the alleged chattel mortgage, they could not say. They admitted that the receiver had not paid, and had not been able out of the earnings of the road to pay, the judgment of Holbrook, and submitted to the court, that if he had been able, he would not have had any right or authority to pay the same. They further alleged upon information and belief, that the judgment remained wholly unpaid, that neither Morrison nor the railroad company had paid it, and they submitted to the court that there was no liability on the part of the receivership or of the property for the payment of the judgment.

On the 22d of December, 1881, an order was made by the court, by which, after reciting that Horsey and Canda had paid to the commissioner the full amount of their bid for the railroad property and assets, namely, in cash, one hundred thousand dollars, and the residue in first mortgage bonds of

the railroad company, it was ordered and decreed that the commissioner should execute a deed of conveyance of the said property and assets to the said Horsey and Canda, to be held subject to all taxes legally due, to the lien of all unpaid receiver's certificates; " and also subject to the lien of any and all claims against the said railroad property and assets which are now before this court by intervening petitions, and which shall be, upon final determination and adjudication, decreed to be paid as liens paramount to the indebtedness secured by said mortgage or deed of trust."

On the 19th of January, 1882, the receiver was also directed to make a conveyance to the purchasers, in order to cover certain real estate, rolling stock and other property which had been acquired by him during his receivership; and to deliver the possession of all such real estate and other property to the purchasers or their grantees, when the commissioner's deed should be presented to him and demand should be made. The receiver made such conveyance on the 30th of January, 1882, and on the 31st, Horsey and Canda conveyed all the property to the St. Louis and Cairo Railroad Company, the appellants; and on the following day, February 1st, 1882, the receiver delivered the railroad and all its appurtenances to said company.

As the Union Trust Company and the receiver, in their answer to Morrison's intervening petition, raised the objection that he had not paid the Holbrook judgment (though, of course, he was bound to pay it), he filed a supplemental petition on the 5th of June, 1882, stating that he had paid the judgment on the 29th of May previous, amounting on that day, for principal and interest, to the sum of $15,352.19, and repeated his original application for relief. To this supplemental petition the Union Trust Company and the receiver filed an answer by which they denied that Morrison had paid the judgment; recited the previous orders requiring claims to be filed by the 1st of July, 1881, and barring those not so filed; the sale of the property, the conveyance thereof to Horsey and Canda, and by them and the receiver to the new company, and the delivery of the railroad property to said company;

and averred that there were no proceeds of the sale in the hands of the receiver out of which payment could be made to Morrison upon his claim.

On the 19th of December, 1883, the special master, Frank H. Jones, to whom, at the time of the sale of the railroad, had been referred intervening claims and petitions filed in the cause, made a report, in which he set forth in detail all the facts and circumstances in relation to the intervening petition and claim of Morrison, as they have been already stated, and the evidence taken by him thereon. The only point contested by the respondents was, the fact of payment by Morrison, and its effect under the previous orders of the court. The evidence reported by the master, however, showed that Morrison did actually pay the judgment at the time stated in his supplemental petition, and the master so found. The exception taken on this point by the respondents, based on the fact that Morrison, in order to make the payment, raised the money on his note, and that it did not appear that he had paid his note, is too trivial for serious consideration. The conclusion reached by the master was, that the claim was barred because Morrison had not actually paid Holbrook's judgment when he filed his original petition, and did not pay it until after the time had expired for claims to be presented, namely, July 1st, 1881.

Morrison excepted to the report, and on the 5th of May, 1884, the court sustained the exception, and allowed the claim, and decreed that Morrison had an equitable lien for the payment thereof against the property sold under the decree of foreclosure, and transferred to the St. Louis and Cairo Railroad Company, with leave to apply to the court for further relief if the claim should not be paid before the first Monday of September then next. This is the decree from which the appeal is taken to this court.

*Mr. William Ritchie* for appellants. *Mr. S. Corning Judd, Mr. Edward B. Esher,* and *Mr. Edward S. Judd* were with him on the brief.

I. The evidence does not show that appellee has ever paid the Holbrook claim. Whatever relief appellee may claim, it is plain that, unless he has actually paid Holbrook, the court should not have decreed any sum of money to be paid to him, or any lien therefor to be created in his favor. Prior to such payment a surety may, perhaps, compel the creditor to pursue the principal debtor in court, but, until payment in full, Mr. Morrison cannot be subrogated to the rights and remedies of Holbrook, the judgment creditor. "The right of subrogation does not arise in favor of a surety until he has actually paid the debt for which he is liable as surety; the right does not accrue to the surety upon his making a partial payment, until the creditor is wholly satisfied. . . . Where the surety is allowed by bill in equity after the debt has become due to compel the creditor to enforce his demand against the principal debtor, yet he cannot be subrogated to the creditor's liens, securities and equities for the debt until he has actually paid it." Sheldon on Subrogation, Sec. 127. See also *Conwell* v. *McCowan*, 53 Ill. 363; *Darst* v. *Bates*, 51 Ill. 439; *Pennsylvania Bank* v. *Potius*, 10 Watts, 148; *Kyle* v. *Bostwick*, 10 Alabama, 589; *Snyder* v. *Blair*, 33 N. J. Eq. (6 Stewart) 208; *Bonney* v. *Seely*, 2 Wend. 481; *Read* v. *Norris*, 2 Myln. & Cr. 361; *Memphis &c. Railway* v. *Dow*, 120 U. S. 287, 301; *Maxwell* v. *Jameson*, 2 B. & Ald. 51; *Taylor* v. *Higgins*, 3 East, 169; *Ex parte Sargent*, 1 Glyn & Jameson, 183; *S. C.* affirmed, 2 Glyn & Jameson, 23; *Taylor* v. *Mills*, Cowper, 525; *Shinn* v. *Budd*, 14 N. J. Eq. (1 McCarter) 234; *Bank of the United States* v. *Winston*, 2 Brock. 252; *Cummings* v. *Hackley*, 8 Johns. 202; *Wynn* v. *Brooke*, 5 Rawle, 106.

II. Aside from all considerations as to the time and mode of its presentation in the court below, appellee is not, legally or equitably, entitled to a lien upon this property in the hands of the St. Louis and Cairo Railroad Company.

The purchasers at the foreclosure sale took the property free from all equities which were subordinate to those of the mortgage creditors. The sale cut off all claims subsequent in time to the execution of the mortgage and not superior in equity thereto. The purchasers' title relates back, for this

purpose, to the date of the mortgage, and (in the absence of provisions to the contrary, in the decree of sale) covers the interests of all persons who are parties to the cause. 2 Jones on Mortgages, §§ 1653, 1654. This, is as true of railroad as of other mortgages. This appellant, deriving its title under the sale, took what it purchased subject to no liens or claims save such, if any, as were paramount to the deed of trust under which the sale was made. *Morgan County* v. *Thomas,* 76 Ill. 120; *Sullivan* v. *Portland & Kennebec Railroad,* 94 U. S. 806; *Menasha* v. *Milwaukee &c. Railroad,* 52 Wis. 414; *Wright* v. *Milwaukee & St. Paul Railroad,* 25 Wis. 46. The purchaser takes free even from taxes accruing against the mortgagor under certain circumstances. *Cooper* v. *Corbin,* 105 Ill. 224. See also *Houston* v. *Huntsville Bank,* 25 Ala. 250; *Calvin* v. *Owens,* 22 Ala. 782; *Dozier* v. *Lewis,* 27 Mississippi, 683; *Winslow* v. *Otis,* 5 Gray, 360; *Tubbs* v. *Williams,* 9 Iredell, 1; *Pierson* v. *Catlin,* 18 Vt. 77; *Ohio Life Ins. & Trust Co.* v. *Winn,* 4 Maryland Ch. 264.

What, then, were Holbrook's rights under his judgment of November, 1872? Being subsequent, it would ordinarily be subordinate, to the mortgage, which covered all the debtor's property then owned or thereafter acquired. *Pennock* v. *Coe,* 23 How. 117; *Dunham* v. *Railway Co.,* 1 Wall. 254; *Scott* v. *Clinton &c. Railroad,* 6 Bissell, 529; *Central Trust Co.* v. *Railroad Co.,* 30 Fed. Rep. 895; *Hammock* v. *Loan & Trust Co.,* 105 U. S. 77, 91.

*Prima facie* the proceeds of the sale belong to the mortgage creditors. *Fosdick* v. *Schall,* 99 U. S. 235. To overcome this presumption, there must be some "peculiar equity," some "special circumstances," the existence of which the claimant himself must clearly and affirmatively establish to the court's satisfaction, for the chancellor will always observe great caution in establishing such a preference as appellee here claims. *Miltenberger* v. *Logansport Railway,* 106 U. S. 287; *Fosdick* v. *Schall, supra; Union Trust Co.* v. *Illinois Midland Railway,* 117 U. S. 434, 458, 479; *Meyer* v. *Johnston,* 53 Ala. 237, 349; *Blair* v. *Railway Co.,* 22 Fed. Rep. 475.

The appointment of a receiver, presumably holding and

conducting the business for the benefit of all the creditors, should have no effect, of itself, to change the relations of the creditors to each other or to the common debtor.

In the case at bar there is no allegation or proof as to the nature of the claim upon which Holbrook's original judgment was rendered. This, it would seem, ought, of itself, to dispose of appellee's claim.

The Holbrook judgment was rendered November 26, 1872. On January 3, 1873, execution thereon was issued, but held until April 3, 1873, when it was returned by the sheriff without levy, by order of Holbrook's own attorneys. In the October following the company defaulted in its interest on the mortgage, making it possible *at that time* for the mortgagee to proceed to foreclosure. But Holbrook still withheld execution until October 27, 1874, (at which time the company, of course, had defaulted in several more instalments of interest). At the latter date he took out an *alias* execution, but still delayed to levy, when, on December 30, 1874, the company, by filing its injunction bond, with appellee and others as sureties, prevented any further efforts to collect the judgment, if any were contemplated. The injunction suit was then allowed to drag its slow length along until at the June term, 1879, of the Supreme Court, a final decision was had. Does this statement exhibit such "special circumstances" as would raise any "peculiar equity" in appellee's favor?

If we are to indulge in conjecture, it is more than possible that the mortgagee has actually suffered by the act of the appellee in staying Holbrook's execution, or will suffer thereby, if appellee's claim herein is to be allowed. Holbrook, instead of levying on the rolling stock, might have made his claim out of the *income* of the road while the mortgagor remained in possession. This he could have done without interference with any of the mortgagee's rights or interests. *Gilman* v. *Telegraph Co.*, 91 U. S. 603; *Mississippi Valley Railway Co.* v. *United States Express Co.*, 81 Ill. 537; see also *Mitchell* v. *Dewitt*, 25 Texas (suppl.) 180; *S. C.* 78 Am. Dec. 561; *Burns* v. *Huntingdon Bank*, 1 Penn. 395; *Potter* v. *Nathans*, 1 W. & S. 155; *Farmers' Bank* v. *Sherley*, 12

Bush, 304; *Fishback* v. *Bodman*, 14 Bush, 117; *Johnson* v. *Morrison*, 5 B. Mon. 106; *Glass* v. *Pullen*, 6 Bush, 338, 350.

In fact, appellee is a *volunteer.* He was not a party to the original contract between Holbrook and the Cairo and St. Louis Railroad Company. He became a party without Holbrook's consent, indeed, against the latter's interest, and for the very purpose of delaying or defeating him. *Bank* v. *Winston*, 2 Brock. 252; *Ins. Co.* v. *Dorsey*, 3 Maryland Ch. 334; *Swan* v. *Patterson*, 7 Maryland, 164; *Gadsden* v. *Brown*, 1 Speer Eq. 37; *Shinn* v. *Budd*, 14 N. J. Eq. 234.

As toward other creditors Mr. Morrison must be deemed to have trusted to his principal and not to the property. *Johnson* v. *Morrison*, 5 B. Mon. 107; *Wiggins* v. *Dorr*, 3 Sumner, 419; *Bank* v. *Rudy*, 2 Bush, 329. As against one whose interests accrued prior to the execution of the injunction bond or bail bond, the surety on such bond has so identified himself with the principal as not to be distinguished from him. *Burns* v. *Huntingdon Bank*, above cited; *Parsons* v. *Briddock*, 2 Vernon, 608; *Wright* v. *Morley*, 11 Ves. 12; *Smith* v. *Anderson*, 18 Maryland, 520; *McCormick* v. *Irwin*, 35 Penn. St. 111.

The practical effect of Mr. Morrison's act in becoming surety was to prevent the Holbrook judgment from being satisfied at all at a time when it might have been satisfied out of property not covered by appellant's mortgage. To this extent appellee's act impaired appellant's security. *Bank of Hopkinsville* v. *Rudy*, 2 Bush, 326, 330, 331. If there was any property in December, 1874, not covered by the mortgage, Holbrook held a lien upon it. The case, then, becomes one where a creditor having a lien on two funds, releases one fund to the prejudice of another creditor, having a lien only on the latter. *Glass* v. *Pullen*, above cited.

By executing the injunction bond Mr. Morrison destroyed the effect of the Holbrook judgment as a lien on the personalty, and released the latter. *Launtz* v. *Gross*, 16 Bradwell (Ill. App.) 329.

Consequently, even if subrogated to Holbrook's rights, Morrison could claim no lien on the personalty. There never was

a levy under the judgment, and as a lien the execution had become *functus officio* before the receiver took possession. *Carroll* v. *The Steamboat Leathers*, Newb. Adm. 432; *Roberts* v. *The Huntsville*, 3 Woods, 386; *The Madgis*, 31 Fed. Rep. 926.

Even without such bond Holbrook could not have seized the company's realty under his judgment (such of it, at least, as was covered by mortgage. Jones on Railroad Securities, §§ 104–106). *Gue* v. *Canal Co.*, 24 How. 257; *Hammock* v. *Loan & Trust Co.*, above cited.

Appellee can, therefore, claim no "peculiar equity" against the mortgagee as having saved the realty from seizure.

[Counsel then considered at length and *seriatim* cases in which debts accruing subsequently to the mortgage have been awarded by the courts priority over the mortgage debt (citing among others *Meyer* v. *Johnston*, above cited; *Union Trust Co.* v. *Illinois Midland Railway*, 117 U. S. 434, 463; *Fosdick* v. *Schall*, 99 U. S. 235, 252; *Union Trust Co.* v. *Souther*, 107 U. S. 591; *Burnham* v. *Bowen*, 111 U. S. 776; *Miltenberger* v. *Railway Co.*, 106 U. S. 286, 311; *Galveston Railroad* v. *Cowdrey*, 11 Wall. 459; *Dunham* v. *Railway Co.*, 1 Wall. 254; *Porter* v. *Bessemer Steel Co.*, 120 U. S. 649, 671; *Huidekoper* v. *Locomotive Works*, 99 U. S. 258); and contended that the appellee's claim did not come within any of the favored classes and continued :]

The lower courts have uniformly held that a judgment against the mortgagor, subsequent to the mortgage, but prior to the receivership, must be held subject to the mortgage. *Central Trust Co.* v. *Railroad Co.*, 30 Fed. Rep. 897; *Hiles* v. *Case, Receiver*, 9 Bissell, 549; *Duncan* v. *Railroad Co.*, 2 Woods, 542; *Newport Bridge Co.* v. *Douglass*, 12 Bush, 673; *Kelly* v. *Railroad Co.*, 10 Bissell, 151.

Not only is this claim not of the nature of a "current debt," but *it comes within no reasonable limit as to time.*

The Holbrook judgment was rendered in 1872, and the receiver was not appointed until *five years* thereafter. While the courts have never undertaken to designate any fixed, certain period of limitation for all cases, it is submitted that such

a period as *five years* is without precedent. The usual period fixed by order of court is commonly six months, seldom over that. *Scott* v. *Clinton &c. Railroad,* 6 Bissell, 535; *Turner* v. *Indianapolis &c. Railway,* 8 Bissell, 315; *Blair* v. *Railroad Co.,* 22 Fed. Rep. 474. Such was the period so fixed in this case. Holbrook himself compelled the delay. We submit that five years exceeds all reasonable limits, and that the claim is stale.

III. Appellee's claim was barred by the excludatory orders entered previous to the foreclosure sale. The St. Louis and Cairo Railroad Company, the principal appellant here was not a party, save by fiction of law, to the principal cause below; it had no day in court and no opportunity to favor or oppose any of the steps in the cause. It would, therefore, seem no more than just that, in determining its rights herein, as liberal a construction of the orders of the court should be made in its favor as is consistent with the language in which such orders are expressed. *Koontz* v. *Northern Bank,* 16 Wall. 196; *Miller* v. *Sherry,* 2 Wall. 237, 250; *Hamlin* v. *McCahill,* Clarke Ch. N. Y. 249. The doctrine of notice by *lis pendens* is one *strictissimi juris. Cockrill* v. *Maney,* 2 Tenn. Ch. 49; see also *Brightman* v. *Brightman,* 1 R. I. 112; *Sapp* v. *Wightman,* 103 Ill. 150.

Bearing in mind that this question is here raised on behalf of a *purchaser* for value (the St. Louis and Cairo Railroad Company), we submit, that to fix a purchaser, pending suit, with notice of equities arising out of the suit, the pleadings, etc., must be clear, explicit and direct as to the nature of the claim. The fact that, by possibility, the claim may, upon a contingency not yet accrued, acquire an interest in the *res*, or a lien upon the property in suit, is not enough to charge the property with such a lien in the hands of such purchaser. See also *Shallcross* v. *Dixon,* 7 L. J. (N. S.) Ch. 183; *Cake* v. *Lewis,* 8 Penn. St. 493; *Ex parte Barwis,* 6 De G., McN. & G. 762; *Kyle* v. *Bostick,* above cited.

The question, then, would seem to turn upon this: When the St. Louis and Cairo Railroad Company bought this property, it bought with notice that appellee was so situated that

he was liable to pay a debt for which the common debtor was primarily responsible; that at the time of such purchase appellee, in fact, had not paid such debt; but that, in case appellee ever should thereafter pay, immediately he would be entitled to recover the amount so paid from the common debtor. Did all this amount to a notice that appellee ever would pay? Under the facts as disclosed in the evidence, could appellant even have felt any certainty (in case it had inquired into the facts) that appellee ever could pay?

IV. Appellee should not have been permitted to file his "supplemental" petition of June 5, 1882. Affecting materially, as this question does, the substantial rights and interests of the parties, there is no reason why the ordinary rules of pleading, devised for the better enforcement or protection of the rights of suitors, should not be applied here to appellee, though his claim is presented by intervening petition merely.

Equity Rule 57 makes leave of court necessary to the filing of a supplemental bill. No leave was had in this case.

This supplemental petition sets forth a fact which, though essential to appellee's recovery, did not exist at the time of his original petition. The supplemental petition prays that the receiver be compelled to pay petitioner a certain sum of money — a measure of relief not possible under the original petition. "We have found no authority that goes so far as to authorize a party, who has no cause of action at the time of filing his original bill, to file a supplemental bill in order to maintain his suit upon a cause of action that accrued after the original bill was filed, even though it arose out of the same transaction that was the subject of the original bill." *Pinch* v. *Anthony*, 10 Allen, 470. See also *Vaughan* v. *Vaughan*, 30 Ala. 329; *Hill* v. *Hill*, 10 Ala. 527.

The objection is not one of mere form, but the ground of it is, that, to allow this subsequent act of appellee set forth in the supplemental petition to be availed of, as a part of appellee's *original* case, would give to such act a retroactive effect, that would operate as a practical fraud upon both the appellants in this case. When the St. Louis and Cairo Railroad Company bought this property and took possession, the matter of this

supplemental petition did not exist, and the purchasers had no means of knowing that it ever would exist. They bought supposing, and having a clear right to suppose, that no claim against the property, which had not been perfected and filed on or before July 1, 1881, would be allowed. To charge them with a burden accruing not only after July 1, 1881, but even after they had bought and taken possession, can hardly be designated otherwise than as a legal, if not a moral, *fraud*.

When the question of *lis pendens* arises upon an " amended bill, it is regarded as an original bill for that purpose," and, as concerns rights thereby affected, the bill must be taken as filed only when the amendment was made. *Miller* v. *Sherry*, 2 Wall. 237; *Griffiths* v. *Griffiths*, 1 Hoffman Ch. 153; *S. C.* on appeal, 9 Paige, 315.

We submit that, whether we consider the nature of the claim itself or the time and mode of its presentation to the court below, no ground in law or equity can be found for the support of the decree in appellee's favor.

*Mr. Charles W. Thomas* and *Mr. Gustav Koehner* for appellee submitted on their brief.

MR. JUSTICE BRADLEY, after stating the case, delivered the opinion of the court.

The plea that the claim was not presented in time we think is wholly untenable. It was brought to the notice of the court by the receiver himself a few days after his appointment. The case, however, was still pending in the state court on appeal, and it was yet uncertain what would be the result. The injunction was not definitely dissolved until June, 1879. The liability of Morrison on his bond was still unadjudicated, and not in a condition to be presented by him as a fixed and determinate claim against the railroad company and its property. Suit was then brought against him, and judgment rendered on the 30th of September, 1880. The foreclosure proceedings were still pending. In May, 1881, the final decree of foreclosure of the railroad property was made, and the time for

presenting claims was fixed, to expire on the 1st of July, 1881. Morrison presented his claim by filing his intervening petition within that time. He stated his entire case. He had not paid the judgment against him, it is true; but, in equity, (if he had any equity at all), he ought to have been protected from making that payment. It ought to have been made by the receiver out of the property which came into his hands. The reason he (the receiver) did not pay it seems to have been want of pecuniary funds. As will be seen, he had disposed of these funds in other ways. But surely, if Morrison had an equitable right to be protected, he ought not to be shut out from all remedy, because he did not do what ought to have been done by the receiver himself, or by the parties whom the receiver represented. We think that the court below was perfectly justified in sustaining the exception to the master's report so far as it was based on the idea that Morrison's claim was barred by reason of his not actually paying the Holbrook judgment until after the period of limitation fixed by the court for the presentation of claims. The claim was presented in time, and, when presented, was ripe for the protection asked for by the petitioner. If he was afterwards compelled to make the payment himself, which those who received the railroad property ought to have made, it only converted his claim for protection into a claim for indemnity, and made his equity all the stronger.

The plea of want of notice on the part of the purchasers of the railroad is equally groundless. The purchasers were really the bondholders themselves. They were represented in the foreclosure suit by the Union Trust Company. They purchased expressly subject to the lien of any and all claims against the railroad property and assets which were then before the court by intervening petition, and which should be, upon final determination and adjudication, decreed to be paid as paramount liens. Morrison's claim was in this category. It was then before the court by his intervening petition. The purchasers were bound to take notice of it. They had notice of it. The pretence of want of notice is entirely without foundation.

The only serious ground of defence to the petition is the legal question, — whether a claim arising under the circumstances, and at the time, in which this did, has an equity to be paid out of the property of the railroad company sold under the mortgage and conveyed to the present company. The ground of the claim is, that a portion of the property covered by the mortgage, being in peril of abstraction and loss, was rescued and saved to the mortgage by the act of the petitioner. It is denied that the property was in any peril, because, as contended by the respondents, it could not have been taken in execution by reason of the prior lien of the mortgage. But it must be conceded that, until the mortgage was enforced by entry or judicial claim, the personal property of the railroad company was subject to its disposal in the ordinary course of business, and, as such, was liable to be seized and taken on execution for its debts. This is not only common law, but the positive law of Illinois. By the constitution of 1870 (art. XI, § 10), it is declared that, "the rolling stock, and other movable property belonging to any railroad company or corporation in this State, shall be considered personal property, and shall be liable to execution and sale in the same manner as the personal property of individuals." Even if it would have been subject to the mortgage, when taken on execution, nevertheless it could have been taken, and this would necessarily have disturbed, and perhaps interrupted, the operations of the railroad, by separating the property seized from the corpus of the estate. The trustees of the mortgage might have prevented such a catastrophe, it is true, by filing a bill of foreclosure, and for an injunction and receiver; but they did not choose to take this course until nearly three years afterwards: on the contrary, they allowed the railroad company to continue to use the property, and to take care of it for them, and stood by and saw Morrison, (who had no interest in the matter,) put his hands into the fire and rescue the rolling stock of which they were to receive the benefit, — both directly, by receiving the property itself without contest or controversy, and indirectly, by keeping up the railroad as a going concern. Morrison's money, or the fruits of it, has

gone into their pockets. And, in this regard, we make no distinction between the mortgagees, the bondholders whom they represented, the nominal purchasers Horsey and Canda, or the present company. They were all one and the same in interest. If the property became justly affected by the equity of the petitioner's claim, it remains so affected in the hands of the present company.

A circumstance to which some weight is due is the chattel mortgage given by the railroad company to Morrison on the four locomotives therein described, to secure him and his co-sureties against the payment of Holbrook's judgment. It shows that they intended to look to the property and not alone to the personal security of the company. He did not attempt to enforce this mortgage, it is true, and did not have it renewed, but followed out the original idea of preserving the stock entire, and keeping up the property as a going concern. Instead of giving this mortgage, the company might, with perfect propriety, have placed funds in the hands of the sureties to enable them to protect themselves, and the transaction would not have been questioned. By not doing so, the receipts and revenues which would have been required for this purpose, went, in the end, to the benefit of the bondholders. It enabled the company to continue its operations for the time being, and resulted in supplying the receiver with the means of purchasing outside property, which, by order of the court, he conveyed to the purchasers of the road, or their assignees.

The main pretence for not protecting Morrison and his co-sureties was that the receiver never had receipts in his hands with which he could have protected them; and this assertion seems to have been credited by the intervenor. But this pretence cannot be true. It is refuted by the record itself. The order of January 19th, 1882, recites that the deed from the special commissioner who sold the railroad under the decree of foreclosure, did not fully cover and convey the legal title to certain real estate acquired by and conveyed to Smithers as receiver, purchased by him under authority of the court, and he was, therefore, ordered to convey all such property, as well

as all personal property and rolling stock purchased by him whilst receiver, to the purchasers of the railroad, or their assigns.   This shows that he had receipts with which he purchased new property, real estate and rolling stock, which went to increase the corpus of the fund of which the bondholders received the benefit.

The intervenor's equity is a very strong one.   His case clearly came within the scope and intent of the decree made February 4th, 1878, which authorized the receiver to protect those sureties on appeal and injunction bonds, who ought to be protected in equity and good conscience by reason of the protection afforded the property and assets of the railroad company through or by means of the giving of such bonds. The complainants (the mortgagees) raised no objection to that decree.   Until after the sale of the railroad, and until the trust came to be wound up, the only plea was that the receiver had not realized sufficient funds from the current receipts of the road to enable him to protect the intervenor.   This plea, (if a good one,) as we have seen, is not sustained by the facts. He actually expended moneys in the purchase of new property, real estate and rolling stock, and paid over to the purchasers everything that came into his hands before and after the sale, not used for expenses.   It is not shown what these purchases and payments amounted to ; but they were probably considerable, and the complainants and receiver could easily have shown that they were insufficient for the indemnification of the intervenor, if such had been the fact.   The proof was in their hands, and not in his.

It is further to be borne in mind, that the purchasers of the railroad accepted a deed therefor from the commissioner under an order of the court expressly declaring that they should hold the property subject to all taxes legally due, to the lien of all unpaid receiver's certificates ; and also subject to the lien of any and all claims against the railroad property then before the court by intervening petitions, which should be, upon final determination and adjudication, decreed to be paid as liens paramount to the indebtedness secured by the mortgage.   The intervenor's claim is precisely in that category.

The case is a special one; and in view of the discretion which the court of first instance is obliged to exercise in matters of this character, taking all the circumstances into consideration, we cannot say that equitable relief was unduly extended in allowing the intervenor's claim. An examination of the cases bearing upon the subject do not lead to a contrary conclusion. See *Fosdick* v. *Schall*, 99 U. S. 235; *Miltenberger* v. *Logansport Railroad*, 106 U. S. 286; *Union Trust* v. *Souther*, 107 U. S. 591; *Burnham* v. *Bowen*, 111 U. S. 776; *Union Trust* v. *Ill. Midland*, 117 U. S. 434; *Dow* v. *Memphis &c. Railroad*, 124 U. S. 652; *Sage* v. *Memphis &c. Railroad*, ante, 361. The appellants place much reliance on the case of *Burnham* v. *Bowen*, where it was held that debts for operating expenses are privileged debts, entitled to be paid out of current income; and that if such income is diverted by the mortgage trustees or the receiver for the improvement of the property, such debts will be decreed to be paid out of the mortgage fund. But it was added by way of caution: "We do not now hold, any more than we did in *Fosdick* v. *Schall*, or *Huidekoper* v. *Locomotive Works*, that the income of a railroad in the hands of a receiver, for the benefit of mortgage creditors who have a lien upon it under their mortgage, can be taken away from them and used to pay the general creditors of the road. All we then decided, and all we now decide is, that, if current earnings are used for the benefit of mortgage creditors before current expenses are paid, the mortgage security is chargeable in equity with the restoration of the fund which has been thus improperly applied to their use." It is this remark on which the appellants rely. It is not our intention, however, to decide anything in the present case in conflict with it. The claim in that case was for operating expenses only, and the rule laid down had special reference to them. The present claim is of a different character, based upon a *bona fide* effort made by the intervenor to preserve the fund itself from waste and spoliation after the mortgage was in arrears and the right to reduce it to possession had accrued. But even here, as we have seen, if the claimant could pursue only the earnings, it is shown that they have been appropriated to the purchase of property which has been added to the fund.

Much of the argument of the appellants is based on the hypothesis that the claim of the intervenor was a claim to be subrogated to the lien of the Holbrook judgment; and it is argued that this lien was subordinate to that of the mortgage held by the complainants. We do not understand that the claim was presented in any such view. The Holbrook judgment and execution could have greatly deranged the business of the company as a going concern. The rolling stock could have been seized and removed. Whether such seizure could, or could not, have been prevented by the mortgagees is a different question. It would, at all events, have required legal proceedings, and probably serious litigation; and this the mortgagees did not see fit to undertake. To save the property from being taken, to prevent the catastrophe which its taking would have caused, and the serious questions which would have arisen had it actually been sold, the intervenor gave his bond to obtain an injunction. It was not done for the purpose of being subrogated to the questionable rights of Holbrook under his judgment; but to prevent the certain injury to the property itself, which the attempted enforcement of those rights would have involved. It is unnecessary, therefore, to discuss the rights of an execution creditor, levying on the personal property of a railroad company in Illinois, as against those of a mortgagee. We express no opinion upon that subject. The claim was presented upon the equities arising in favor of the intervenor for taking the action he did, and thus securing the results which followed, and upon the other circumstances of the entire case taken together; and it was upon these grounds that the claim was allowed by the court below.

*The decree of the Circuit Court is affirmed.*