CALIFORNIA SAFE–DEPOSIT & TRUST CO. v. YAKIMA INV. CO. et al.

(Circuit Court, D. Washington, S. D. July 5, 1897.)

1. IRRIGATION COMPANIES—PREFERRED DEBTS—EQUITY RULE OF PRIORITY.
   The modern rule of equity, giving preference and priority to debts incurred in the operation of railroads over existing mortgages, has its foundation and justification in, and has been evolved from, conditions peculiar to the nature of railroad franchises; and it is a serious question whether it may properly be extended to cases where the mortgaged property consists of canals and works for irrigating land.

2. SAME—LATERAL DITCHES—COST OF CONSTRUCTION.
   Claims for services in the construction of lateral ditches extended from time to time, as required in the actual operation of conducting water to the different tracts of land to be irrigated by an irrigation company, will be treated as cost of original construction, and not preferential debts, even under the equity rule applicable to railroads.

Charles E. Shepard, for petitioners.
D. J. Crowley, for receivers.
O. F. Paxton, for plaintiff.

HANFORD, District Judge. Now, on this 5th day of July, 1897, this cause having been brought on for hearing upon the petitions of H. K. Owens and George J. McLean to establish their respective claims as preferred creditors of the defendant company, pursuant to a stipulation in writing, whereby the parties have consented that said cause may be heard and determined as to the claims of said petitioners, at Seattle, and the court having heard and considered the pleadings of the parties, and the evidence, and arguments of counsel, and being now sufficiently advised in the premises, doth find as follows:

(1) The petitioner H. K. Owens is a civil engineer, and skilled in his profession.

(2) At a time prior to the appointment of the receivers, to wit, in the month of June, 1893, said petitioner H. K. Owens was employed by the defendant the Yakima Investment Company as a consulting

engineer, and in that capacity rendered services in constructing and extending the main canals and lateral ditches and other irrigating works of said defendant. and continued in the service of said defendant in said capacity until the 31st day of December, 1894.

(3) The contract of employment of said petitioner Owens was verbal, and was made by and between said petitioner and Paul Schulze, president of the defendant company, in behalf of said company; and it was thereby promised and agreed by the defendant that said petitioner should be paid for his services at the rate of $250 per month.

(4) From the month of June, 1893, to December 31, 1894, said petitioner was at all times subject to orders from the managing officers of the defendant, and ready to render whatever services he should be called upon to perform as an engineer; but he was not continuously engaged in the service of the defendant, and at times during said period he was otherwise employed.

(5) On the 7th day of November, 1894, upon a statement of account between said Paul Schulze, as president of the defendant company, and acting for said company. and the petitioner, it was agreed that the sum of $1,400 was then due to the petitioner from said company for his services rendered to the defendant pursuant to said contract of employment, and several certificates of indebtedness, amounting in the aggregate to the sum of $1,400, were then duly issued to him. And on the 31st day of December, 1894, pursuant to an agreement then made between the said president of the defendant company and said petitioner as to the amount of indebtedness from the defendant to said petitioner for his services in the months of January, February, and March, 1894. a certificate of indebtedness in the sum of $600 was duly issued to him.

(6) Upon a final adjustment between the managing officers of the defendant and said petitioner the amount of indebtedness of the defendant to said petitioner for his services pursuant to said contract was agreed upon, and fixed at the sum of $2,500, including the sums for which certificates were issued, as above set forth.

(7) Said petitioner has not been paid any part of the sums due to him as aforesaid, and the defendant is now indebted to him in the sum of $1,400. with interest thereon at the rate of 7 per cent. per annum from the 7th day of November, 1894, and in the further sum of $600, with interest thereon at the rate of 7 per cent. per annum from the 31st day of December. 1894, and in the further sum of $500, with interest thereon at the rate of 7 per cent. per annum from the 1st day of May, 1895.

(8) In consideration of the indebtedness of the defendant to the several persons named therein, said defendant company on divers different days in the year 1894 issued the several certificates of indebtedness set forth in the petition of George J. McLean, amounting in the aggregate to the sum of $490.85. and at a time prior to filing his petition herein said petitioner McLean became the lawful owner of each of said certificates.

(9) No part of the indebtedness of the defendant evidenced by said certificates has been paid, and the amount thereof, with legal

interest from the dates of said certificates, respectively, is lawfully due to said petitioner McLean from the defendant.

(10) Of the amount claimed by the petitioner McLean, $34.53, and no more, is due to him for wages earned by him in the service of the defendant.

(11) Said petitioners have not acquired any lien upon any part of the property of the defendant company.

It is the decision of the court that these claims are not preferential debts, but the petitioners are entitled to have judgment in their favor for the amounts due to them, respectively, as found and specified above, and to have said amounts paid out of any surplus moneys which may come into the hands of the receivers, or be paid into the registry of the court, over and above what may be necessary to pay the costs and expenses of the proceedings herein, and the amount of the principal and interest due and to accrue upon the receivers' certificates, authorized by orders of this court, and the principal and interest due to the plaintiff upon the mortgage in suit.

The modern rule of equity, which gives preference and priority to debts incurred in the operation of railroads over mortgages existing at the time of incurring such debts, as defined in the case of Fosdick v. Schall, 99 U. S. 235, 256, and extended in the cases of Miltenberger v Railroad Co., 106 U. S. 286–314, 1 Sup. Ct. 140, Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 434–481, 6 Sup. Ct. 809, and Union Trust Co. v. Morrison, 125 U. S. 591–613, 8 Sup. Ct. 1004, rests upon necessity, and has been evolved from conditions peculiar to the nature of railroad franchises. Railways are public highways, and it is not optional with their owners' to operate them or not. They must be kept going, to entitle the owners to a continuance of their franchises, and the necessary expenses of operation must be paid. It is a serious question whether or not the same rule may be properly applied in cases where the mortgaged property consists of canals and works for irrigating land. It is unnecessary, however, for me to pass upon this question at present, as the limitations of the rule exclude the claims of these petitioners as preferential debts. The services of the petitioner Owens, for which compensation is due, were all performed in the original construction of the defendant's irrigating works. In the case of McLean, only a trifling amount of $2.20 of his claim is for labor performed in work that may be denominated operation. An attempt was made by counsel, in the argument, to make a distinction between the construction of lateral ditches from the main canals, on the ground that the laterals are extended from time to time, as required in the actual operation of conducting water to the tracts to be irrigated. But in the light of the authorities I must hold that the difference is not sufficient to distinguish the case from other cases in which the general rule has been limited in its application so as to exclude debts for cost of original construction. In the case of Railroad Co. v. Hamilton, 134 U. S. 296–306, 10 Sup. Ct. 546, 547, the supreme court of the United States, in its opinion by Mr. Justice Brewer, held emphatically that:

"A recorded mortgage, given by a railroad company on its roadbed and other property, creates a lien, whose priority cannot be displaced thereafter directly

by a mortgage given by the company, nor indirectly by a contract between the company and a third party for the erection of buildings or other works of original construction."

The facts of that case afford ground for contending with quite as much reason as in the case now under consideration that the labor for which compensation was claimed should be classed as work necessary in operation, but in the opinion of the court words seem to have been carefully selected to include all structures and additions made after the road had been put in operation in the same category as the original main line of railway, and the broad rule laid down in the sentence above quoted is just as applicable to this case as to the one in which the decision was made. I rest my decision upon the authority of that case.