## GATCH TENNANT & CO. v. MOBILE & O. R. CO.

### No. 157.

District Court, S. D. Alabama.
June 1, 1936.

See, also, 59 F.(2d) 217.

Coleman, Spain, Stewart & Davies, of Birmingham, Ala., for intervener United States Fidelity & Guaranty Co.

Benners, Burr, McKamy & Forman, of Birmingham, Ala., for intervener Illinois Cent. R. Co.

ROBERT T. ERVIN, District Judge.

The receiver in this cause was appointed on June 6, 1932, in a suit which alleged that certain judgments had been recovered against the Mobile & Ohio Railroad, and that executions would be levied on its property and it subjected to sale causing dismemberment of its line unless the court took jurisdiction and appointed a receiver to take possession of the railroad.

The order of June 6, 1932, appointed a receiver and contained certain provisions that have been uniformly found in such orders for over twenty years where railroads have been taken possession of by the federal courts. Among them was a provision authorizing the payment of such claims as that of the intervener Fidelity & Guaranty Company, and also such claims as that of the intervener Illinois Central Railroad Company.

The Fidelity & Guaranty Company on April 27, 1934, filed its intervention setting up that it had made the appeal bonds on the judgments against the Mobile & Ohio Railroad referred to in the original bill, and that such judgments had been affirmed and that it had paid such judgments aggregating $100,000, that it was entitled to payment, and prayed that the receivers be directed to pay its claim. A written agreement was made between the Fidelity & Guaranty Company and the receiver that such company was entitled to payment under the terms of the order of June 6, 1932, and on May 22, 1932, a decree was signed approving such agreement. The agreement recites:

"In recognition of the aforesaid right on the part of the intervener, the Receivers would pay intervener's claims in full under the discretionary powers conferred upon them in the order of their appointment, but such payment would deplete their cash so that the future operation of the properties would be jeopardized, and hence an orderly plan for the liquidation of intervener's claims in installments is in the interest of all parties.

"In view of the limited amount of cash on hand and in sight the Receivers will pay intervener $1000.00 in cash as soon as this agreement shall have been approved by the Reconstruction Finance Corporation, and, subject to such approval, will pay intervener $1000.00 on the first days respectively of June, July, August, September, October, November, and December 1934, all such payments to be credited by intervener on the claims sought to be collected in this intervention proceeding."

The receivers paid the sums on the dates as stipulated and then declined to make further payments because, as alleged, they did not have sufficient funds.

After considerable discussion the Fidelity & Guaranty Company petitioned the court to order the receivers to pay its claim, and, after a hearing of several days as to the finances of the estate, the court found that the receivers could, without prejudice to the operation of the railroad, pay to the guaranty company $1,000 a month, and en-

tered an order on April 25, 1936, directing them to do so until further orders.

On May 9, 1936, the Illinois Central Railroad Company filed its intervention, setting up that it was a creditor of the Mobile & Ohio Railroad Company, having a claim of $52,869.55 for items incurred within six months prior to the appointment of the receiver, which would come under the order of June 6, entitling it to be paid by the receiver.

It disputes the claim of the guaranty company to preferential payment and sets up that such company is only a common creditor, and prays that the court will review its former order and will grant intervener a preference and will deny preference to the guaranty company, and will direct the receivers to make no further payments to the guaranty company.

On the argument the Illinois Central Railroad admitted the right of preference in the guaranty company, but contended that it had an equal right, and that in equity it was entitled to be paid an equal sum to any paid to the guaranty company.

On the hearing as to the financial status of the estate, it was shown that the Mobile & Ohio Railroad Company had under the rules laid down by the Interstate Commerce Commission set aside $74,500 and set it up on the books as a reserve to cover the claims sued on in the cases where the guaranty company had made the appeal bonds for the railroad company, and that this $74,500 had gone into the hands of the receiver on his appointment, and had been used by him in his administration instead of paying it to the guaranty company.

In section 77 of the amendment to the Bankruptcy Act providing for the reorganization of railroads, subdivision (n), 11 U. S.C.A. § 205 (n), such claims as that of the guaranty company are made preferred claims and are required to be paid as operating expenses.

■ It seems to me that outside of the custom of the courts in giving preferential status to such surety bond makers in receivership matters, these two federal enactments show a policy which the courts should recognize in declaring such claims as having a preferential status.

I come now to the contention that the Illinois Central Railroad Company is entitled to an equal equity with the guaranty company, and if a payment is made to the latter company, the same percentage should at the same time be paid to it.

In the first place this is a going concern, and not at present ready for final settlement. The assets have not been converted into cash, so how can I marshal the assets as to time of payments by the receiver?

There are many occasions where it is necessary in a going concern to pay a claim or a percentage on it, for the benefit of the estate. It would be almost impossible for the court to then call in all others having similar claims and pay to each a similar percentage.

Again no evidence was offered to show that such estate would not be able, when wound up, to pay to the Illinois Central Railroad Company the same percentage on its claim as is being paid to the guaranty company, and they can suffer no loss if they ultimately get the same percentage on their claim. The payments to the guaranty company are not the face of its claim and it will take a long time before they equal that, and in the meantime the court, for that very purpose, has reserved the right to control them, so it can not only safeguard the operations of the receivers, but see that equity is done.

Remembering the equity alleged in the bill is the fear of sale under execution by the judgment creditors and the execution of the supersedeas bonds by the guaranty company brings the instant case very close to the facts in Union Trust Co. v. Morrison, 125 U.S. 591, 8 S.Ct. 1004, 1009, 31 L.Ed. 825, the bond there was for an injunction to preserve the estate, and the court says:

"The intervenor's [surety's] equity is a very strong one. His case clearly came within the scope and intent of the decree made February 4, 1878, which authorized the receiver to protect those sureties on appeal and injunction bonds, who ought to be protected in equity and good conscience by reason of the protection afforded the property and assets of the railroad company through or by means of the giving of such bonds. The complainants (the mortgagees) raised no objection to that decree. Until after the sale of the railroad, and until the trust came to be wound up, the only plea was that the receiver had not realized sufficient funds from the current receipts of the road to enable him to protect the intervenor. This plea (if a good one), as we have seen, is not sustained by the facts."

■ Again the facts showed that the receivers came into possession of and used for the benefit of the estate, $74,500 which

had been set up to pay the claims on which the judgments had been recovered. It was these same judgments which the bonds of the guaranty company superseded. This, it seems to me, gives the guaranty company a superior equity, at least until $74,500 has been paid to it.

On this question the court in McCullough v. Union Traction Co., 206 Ind. 585, 186 N.E. 300, 308, 90 A.L.R. 648, said:

"The contention that the regulation prescribed by the Interstate Commerce Commission is merely a bookkeeping method is untenable. If the contention is true, then the system is absolutely meaningless and without substance. The regulation required that the traction company should set aside part of its current revenue of income for the payment of claims for injuries. * * * The company did this * * * and it held out to the commission, and to the public, that it was setting aside a fund for the purpose of taking care of such claims as the ones involved in the instant case. When the rates were fixed by the Public Service Commission, they were necessarily increased for the very purpose of meeting such claims as here involved and not for the benefit of the mortgagees."

I have not ruled on the guaranty company's objection to the allowance of the intervention of the Illinois Central Railroad Company, because I prefer to pass on the merits of the controversy, but the order of June 6, 1932, in paragraph (9) reads as follows: "Said Receiver is authorized in his discretion, from time to time, until further order of this Court, out of the funds coming into his hands, to pay * * * (F) all amounts now or hereafter payable by sureties upon all supersedeas, appeal, attachment or garnishment bonds executed by said sureties without security for the benefit of the Railroad Company."

This same order in subdivision (e) of section (9) provides for payment in the same manner of such claims as that of the Illinois Central Railroad Company.

It was under this decree the claim of the Illinois Central Railroad Company was filed.

Surely it was chargeable with notice of all its provisions. It will be noticed that the power reads the receiver may from time to time until further order pay, etc. This certainly contemplated periodical payments in course of the administration of the estate and not at its winding up. Had the receiver paid this claim what right would the Illinois Central Railroad Company have to complain at this time? Did the receiver appointed by the court have greater power than the court which appointed him?

When the order of April 25, 1936, which is sought to be reviewed, was entered, I wrote no opinion as I saw no necessity at that time for one, so that the present opinion is intended to apply to that order as well as the present proceeding.

An order will be entered overruling the petition of the Illinois Central Railroad Company.