VEATCH et al. v. AMERICAN LOAN & TRUST CO. et al.

(Circuit Court of Appeals, Eighth Circuit.   March 22, 1897.)

No. 832.

1. RAILROAD MORTGAGES—RECEIVERS—PREFERENTIAL CLAIMS.

A claim for damages for death by the negligence of a railroad company, occurring before the appointment of a receiver, is not a preferential claim, which is entitled to be paid out of the income or the corpus of the mortgaged property, to the exclusion of the mortgage debt.

2. SAME—EXPENDITURES BY RECEIVERS.

Where a railroad mortgage authorizes an expenditure of the income by the trustee, when he should take possession, to such extent as he deems proper in improvements, and in purchases of rolling stock and other necessary equipment and materials, a court appointing a receiver in foreclosure proceedings may authorize the receiver to make similar expenditures; and, where the plaintiffs in judgments against the company for deaths by negligence are claiming the right to a preference out of current income because of such alleged diversion of income by the receiver, it will be presumed, in the absence of a showing to the contrary, that the expenditures complained of were sanctioned by the court.

3. SAME.

Where a contract under which the railroad of one company was controlled by another company bound the controlling company to apply the income first to the payment of operating expenses, it only lies in the mouth of the owner of the road to complain of a breach of that provision; and such a breach does not constitute a diversion of funds that will entitle the plaintiffs in a judgment for death by negligence, against the company owning the road, to a preference out of current income as against mortgagees.

4. SAME.

Where the plaintiffs in judgments against a railroad company for deaths by negligence are claiming a preference out of current income as against mortgage bondholders, on the ground that, when the accident occurred, the road was being operated by a company acting as the agent of the bondholders, the latter assertion being a mere conclusion of the pleader, and the facts on which it was based being too vague and general to show with sufficient certainty that it was well founded, the claim to a preference on that ground must be denied.

5. SAME.

General judgment creditors, whether their claims arose out of contract or tort, are as much entitled as the mortgage bondholders to participate in the distribution of surplus income accumulating in the hands of a receiver appointed at the instance of stockholders, before the income has been impounded by the mortgage bondholders; and, if there are equitable considerations giving the bondholders a better right, they must be shown by proper averment.

Appeal from the Circuit Court of the United States for the District of Colorado.

W. H. Bryant (C. S. Thomas and H. H. Lee with him on the brief), for appellants.

E. E. Whitted (Henry W. Hobson with him on the brief), for appellees.

Before SANBORN and THAYER, Circuit Judges, and LOCH-REN, District Judge.

THAYER, Circuit Judge. This is an appeal from an order sustaining a demurrer to an intervening petition in an equity suit, and directing a dismissal of the same, on the ground that the averments thereof did not entitle the interveners to the relief prayed for. The facts disclosed by the intervening petition (hereafter termed the "complaint") are substantially these: Addie Veatch and Emma Henderson, who are the appellants and interveners, respectively recovered judgments against the Union Pacific, Denver & Gulf Railway Company (hereafter termed the "Denver & Gulf Company"), on June 1, 1895, each judgment being for the sum of $5,000. The suits in which the judgments were obtained were brought to recover the damages sustained on account of the death of two persons, to wit, William E. Nye, who was the son of Addie Veatch, and Harry Henderson, who was the husband of Emma Henderson, both of whom were employés of the Denver & Gulf Company, the one being a fireman, and the other an engineer, and both of whom were killed on or about July 27, 1893, in a railroad accident which occurred on the railroad of said Denver & Gulf Company, through its fault and negligence, by reason of the fall of a defective railroad bridge or trestle. The railroad of the Denver & Gulf Company was controlled by the Union Pacific Railway Company, under a contract with the former company, the terms of which are not shown. On or about October 12, 1893, succeeding the accident, receivers were appointed for the Union Pacific Railway Company, who forthwith assumed charge of the Denver & Gulf Railroad, as a part of the Union Pacific System, and operated it until December 18, 1893. At the latter date, in a suit which had been brought by John Evans, a stockholder of the Denver & Gulf Company, against said company, in the circuit court of the United States for the district of Colorado, Frank Trumbull was appointed receiver of the latter company, and forthwith took possession of all its property, and thereafter operated its road under said appointment until October 31, 1894, when he was further appointed receiver of the same property in a suit brought by the American Loan & Trust Company, as trustee of certain mortgage bondholders, against the Denver & Gulf Company, to foreclose the consolidated mortgage on its road. After the latter suit was brought, and on October 31, 1894, an order was entered in said suit consolidating it with the previous suit which had been brought by John Evans, as a stockholder of the Denver & Gulf Company.

The interveners based their right to an order directing Frank Trumbull, the receiver, to pay their judgments out of the funds in his hands, on five different grounds, which were stated in detail in the complaint. The first was, in substance, that, as the claims on which the judgments were founded accrued within a period of 90 days before the Denver & Gulf Railway first passed into the hands of a receiver, the claims should be treated as ordinary operating expenses, and paid in preference to the mortgage bonds, which the

American Loan & Trust Company was seeking to collect in its suit for foreclosure. The second ground was that the holders of mortgage bonds, whose mortgage was being foreclosed by the American Loan & Trust Company, were, in legal effect, operating the Denver & Gulf Railway when the injuries complained of were sustained. In this behalf it was alleged, in substance, that the Denver & Gulf Company had issued stock to an amount exceeding $32,000,000, and mortgage bonds in the sum of $15,801,000, for the purpose of defrauding the public, inasmuch as the aggregate value of its corporate property at the date of such issue did not exceed $15,000,000; that the Union Pacific Railway Company had guarantied the payment of said bonds, and had become the purchaser of said bonds to an amount exceeding $12,000,000, and an owner of said stock to an amount exceeding $13,000,000, and had assumed the management and control of the railroad of the Denver & Gulf Company, with full knowledge that it could never pay operating expenses and the interest on its bonds. In view of the premises, the interveners charged that from the date of its organization, in the year 1890, until October, 1893, when receivers were first appointed, the Denver & Gulf Railway was operated by the Union Pacific Railway Company for and in behalf of the mortgage bondholders of the Denver & Gulf Company, and that said bondholders were responsible for whatever liabilities, whether for negligent acts or otherwise, had been incurred in the meantime. The third alleged ground of recovery was that between October 12, 1893, when receivers first took charge of the Denver & Gulf Railway, and October 31, 1894, when a receiver was appointed in the bondholders' suit, a large sum of income had been received by the receiver from the operation of the road, which, in equity, ought to be appropriated to the payment of the interveners' claims. In this behalf the allegations were, in substance, that the consolidated mortgage in which the American Loan & Trust Company was named as trustee did not pledge, or attempt to pledge, the income of the mortgaged property for the payment of the bonds issued by the Denver & Gulf Company; that the bondholders had no claim on the income of the mortgaged property until they had actually taken possession of the property for a default, either in the payment of interest or principal of the mortgage debt; that prior to October 31, 1894, when such possession was first taken, the said Frank Trumbull, acting as receiver in the stockholders' suit brought by John Evans, had realized from the operation of the railroad of the Denver & Gulf Company a sum exceeding $400,000, in excess of operating expenses, on which the bondholders had no claim; and that this sum should be devoted to the payment of the claims of general creditors, and particularly to the payment of the interveners' judgments. The fourth ground of recovery stated in the complaint alleged a diversion of funds by the receiver, Frank Trumbull, to the prejudice of the interveners. In this behalf it was charged, in substance, that while the said receiver had been in charge of the mortgaged property, as receiver in the bondholders' suit, he had expended the surplus income, not in paying the in-

terest and principal of the mortgage debt, but in making permanent and costly improvements on the mortgaged property, and in the purchase of rolling stock. Because of such alleged diversion of funds, the interveners claimed that their judgments should be paid out of current income. The fifth and last ground of recovery alleged a wrongful diversion of funds by the Union Pacific Railway Company during the period of its alleged operation of the Denver & Gulf Railroad, prior to the appointment of receivers, on October 12, 1893. In this behalf, the allegations were, in substance, that, under the contract between the Union Pacific Railway Company and the Denver & Gulf Company for the operation of its road, the former company was in duty bound to apply the income from its operation—First, to the payment of operating expenses, and, second, to the payment of interest on bonds; that, instead of doing so, it had appropriated income, which should have been used for paying operating expenses, to making permanent improvements on the Denver & Gulf Railroad, and to the payment of interest charges on bonds; that during the 90 days succeeding July 27, 1893, when the accident occurred, it had thus appropriated about $103,000, of which sum $93,000 had been expended in paying interest on bonds that were secured by an underlying mortgage on a part of the Denver & Gulf road, which was executed by a corporation known as the Colorado Central Railroad Company, and $10,-000 in making permanent improvements on the road. Because of such alleged diversion of income by the Union Pacific Railway Company, the interveners claimed that they were entitled to an order for the payment of their judgments out of current income.

In so far as the interveners' claims for allowances against funds in the hands of the receiver are based on the first ground above stated, they are concluded by the decision of this court in Trust Co. v. Riley, 36 U. S. App. 100, 16 C. C. A. 610, and 70 Fed. 32, and the order applied for must be refused. We held in that case, after a review of all the decisions, that a claim for damages for personal injuries which were the result of a negligent act of the mortgagor company, committed before the appointment of a receiver in a suit brought to foreclose a mortgage, is not a preferential claim, which is entitled to be paid out of the income or the corpus of the mortgaged property, to the exclusion of the mortgage debt. We are satisfied that the views expressed in that decision are sound, and fully sustained by the authorities cited. Without indulging in further discussion of the subject, therefore, we shall content ourselves with what was said in that case.

Neither are we able to decide that the interveners showed that they were entitled to the relief prayed for by reason of the alleged diversion of income, described in the fourth and fifth paragraphs of the complaint. It appears from the allegations of the complaint that under the provisions of the consolidated mortgage, in which the American Loan & Trust Company was named as trustee, the trustee was authorized, in case of a default occurring under the mortgage, to take possession of the mortgaged property; and, in the event of so doing, it was empowered, among other things, "to make

from time to time, at the expense of the trust estate, such repairs, alterations, additions, and improvements, as well in respect of the rolling stock and equipment as in respect of the railway, and to do all such other things, as the trustee shall think proper to promote the interests which the holders of the bonds hereby secured have under this mortgage." The mortgage clearly authorized an expenditure of the income of the mortgaged property by the trustee when he should have taken possession of the property, to such extent as the trustee deemed proper in improving the property and in purchasing rolling stock and other necessary equipment and materials; and we perceive no reason why the court by whom the receiver was appointed might not authorize him to make similar expenditures, if it deemed the same necessary and proper. The complaint does not show that the expenditures alleged to have been made by the receiver subsequent to October 31, 1894, were unauthorized by the court under whose orders he acted; and, in the absence of such an averment, we must presume that they were duly sanctioned and approved. Expenditures of income thus made cannot be regarded as a wrongful diversion of funds, such as will entitle the interveners to the payment of their judgments out of the current income of the property, inasmuch as the claims upon which the judgments are founded were in no sense of a preferential character.

There is even less reason, we think, for holding that the alleged expenditures of income by the Union Pacific Railway Company prior to October 12, 1893, constitute a diversion of funds, which would have authorized the circuit court to direct the payment of the interveners' judgments out of current income. If no contract had existed between the Union Pacific Railway Company and the Denver & Gulf Company relative to the operation of the road of the latter company, it is obvious that the Denver & Gulf Company would have been at liberty to expend its income in improving and extending its roadbed, purchasing rolling stock, and paying its fixed charges. It could not have been said that it was guilty of any wrong in making such use of its income, in place of using it to discharge liabilities for injuries to persons or property. The Denver & Gulf Company is not here complaining that the Union Pacific Railway Company has violated that provision of its contract for the operation of the Denver & Gulf Railroad which required the appropriation of the gross income, first, to the payment of operating expenses; and we think that it only lies in the mouth of that company to make such a complaint. We are unable to hold, therefore, that the breach of the provision of the alleged agreement in the respects stated in the complaint constitutes a diversion of funds, which entitles the interveners to relief in this proceeding.

The second ground of recovery stated in the complaint, as heretofore explained, seems to be that, when the injuries were sustained on which the interveners' claims are founded, the Denver & Gulf Railroad was being operated by the Union Pacific Railway Company as the agent of the bondholders, who are represented in this proceeding by the American Loan & Trust Company. It is charged, in effect, that, because of such operation of the road by an

agent of the bondholders, the latter are personally liable for the injuries in question, and cannot complain if the judgments are paid out of the income of the mortgaged property as it is realized by the receiver.    But this charge that the Denver & Gulf Railroad was being operated by the bondholders at the date above mentioned is a conclusion of the pleader, and the facts on which that conclusion is based do not warrant it, or, at least, they do not show with sufficient certainty that it is well founded.    The facts alleged are that the Denver & Gulf Company was over capitalized; that it issued more stock and bonds than it was entitled to under the laws of Colorado; that the Union Pacific Railway Company guarantied the payment of the bonds, and purchased a large part of the same, and also became the owner of a large part of the stock of the Denver & Gulf Company; that a contract of some sort, the precise nature of which is not stated, was thereupon entered into between the Union Pacific Railway Company and the Denver & Gulf Company, under which the former company practically controlled the management of the Denver & Gulf System; and that such contract was made by the Union Pacific Railway Company knowing that the road of the Denver & Gulf Company could not be made to pay operating expenses and fixed charges; and that the stockholders of the road could not hope for any return from their investment in the stock. The complaint does not show, however, that the bonds secured by the consolidated mortgage were or are void, because the Union Pacific Railway Company is alleged to have purchased said bonds to an amount exceeding $12,000,000, which implies that it paid value therefor to the mortgagor company.    Neither does the complaint show that, at the date of the injuries complained of, the Union Pacific Railway Company continued to own the bonds which it had purchased and guarantied.    The fair and reasonable inference is, we think, that, when the foreclosure suit was instituted, many, if not all, of the bonds, had passed into the possession of innocent purchasers for value, who are now represented by the American Loan & Trust Company.    Moreover, as the interveners' judgments were recovered against the Denver & Gulf Company, and not against the Union Pacific Railway Company, they must have alleged and shown, in the suits in which the judgments were recovered, that the Denver & Gulf Company was operating its road when the injuries complained of were sustained.    In view of these considerations, we think that the allegations found in what is termed the second cause of action stated in the complaint are altogether insufficient to warrant us in holding that the bondholders under the consolidated mortgage were in fact operating the Denver & Gulf Railroad when the injuries complained of were sustained, and that for such reason the interveners' judgments ought to be paid out of the current income of the mortgaged property.    In our opinion, the complaint is too vague and general, and does not state the necessary facts to justify such a conclusion.

While we entertain the views heretofore expressed concerning the first, second, fourth, and fifth grounds of recovery or causes of action stated in the intervening complaint, yet we have not been able

to concur in the view which seems to have been entertained by the circuit court respecting the third cause of action. In that paragraph of the complaint it was averred, as we have before said, that while the receiver operated the Denver & Gulf Railroad under his appointment in the stockholders' suit brought by John Evans, and prior to the filing of the bill of foreclosure by the American Loan & Trust Company, he realized of net income, over and above operating expenses, a sum exceeding $400,000, to which the lien of the consolidated mortgage did not attach. If this be so (and for the purposes of this case the allegation must be taken as true), we perceive no reason why the interveners are not equitably entitled to have the whole or a part of their judgments paid out of the surplus income in question. It cannot be admitted that the mortgage bondholders, having no lien on the fund in question, are entitled to absorb the entire amount, to the exclusion of general creditors. The claims of general creditors whose demands, whether arising out of contract or tort, have been reduced to judgment, would seem to be as meritorious as the claims of the mortgage bondholders, and as much entitled as theirs to participate in the distribution of the surplus income which accumulated while the road was being operated by the receiver, at the instance of stockholders, before the income had been impounded by the mortgage bondholders. Sage v. Railroad Co., 125 U. S. 361, 378, 379, 8 Sup. Ct. 887. It may be that there are equitable considerations not disclosed by this record, which would alter the existing aspect of the case, and warrant the court in rejecting the interveners' claims, even as against the surplus income which was realized by the receiver prior to October 31, 1894. If such considerations exist, they should be shown by the appellees by proper averment. We think that the demurrer was not properly sustained to the entire complaint, but that the appellees should have been required to answer as to the facts averred in the third cause of action. The order sustaining the demurrer to the intervening petition, and directing a dismissal thereof, is therefore reversed, and the cause is remanded to the circuit court for further proceedings therein, not inconsistent with this opinion.