## HAMPTON v. NORFOLK & W. RY. CO.

### FIDELITY INS., TRUST & SAFE DEPOSIT CO. et al. v. NORFOLK & W. R. CO. et al.

(Circuit Court of Appeals, Fourth Circuit. February 2, 1904.)

#### No. 476.

1. RAILROADS—FORECLOSURE SUIT—PREFERENTIAL DEBTS.

A judgment obtained against a railroad company, after its property has been placed in the hands of receivers in a suit to foreclose a mortgage thereon, for a tort committed prior to the receivership, is not entitled to priority of payment over the mortgage debt from the earnings of the receivership.

2. SAME—NORTH CAROLINA STATUTE—JUDGMENTS FOR TORTS.

Code N. C. § 1255, which provides that the giving of a mortgage by a corporation shall not exempt its property or earnings from execution for the satisfaction of a judgment rendered by a court of the state against the corporation for a tort does not apply to a judgment against a lessee of a railroad so as to render it a lien on the property superior to a mortgage given by the lessor prior to the lease, nor does it give the judgment creditor any right to payment from earnings of the road while in the hands of receivers appointed in a suit to foreclose the mortgage, where all rights and interests of the lessee in the property and earnings were extinguished by such appointment and the subsequent sale of the property in the proceedings for less than the mortgage debt.

Appeal from the Circuit Court of the United States for the Western District of North Carolina, at Greensboro.

For opinion below, see 114 Fed. 389.

J. E. Alexander and J. S. Grogan (Lindsay Patterson, on the brief), for appellant.

J. C. Buxton (Joseph I. Doran and Theodore W. Reath, on the briefs), for appellee.

Before GOFF, Circuit Judge, and BRAWLEY, District Judge.

BRAWLEY, District Judge. Gideon D. Hampton filed his petition in the cause above entitled January 9, 1902, asking for the payment of a judgment theretofore recovered against the Norfolk & Western Railroad Company. The record shows that the petitioner commenced a suit in the superior court of Forsythe county, N. C., March 4, 1895, against the Norfolk & Western Railroad Company for personal injuries, and recovered a judgment in the sum of $1,000 and costs February 22, 1897, which judgment was subsequently affirmed by the Supreme Court of North Carolina, and it appears that the

injury for which he sought compensation was received from his falling into a cut, December 21, 1894, on the line of the Roanoke & Southern Railway Company, in the town of Winston Salem, which was alleged to have been carelessly and negligently permitted to remain open without a railing. The Roanoke & Southern Railway Company was then operated by the Norfolk & Western Railroad Company under a lease for 999 years, and the suit was brought against the last-named company. The main line of this company lies in the state of Virginia, and upon the bill and answer in the United States Circuit Court for the Eastern District of Virginia, in the cause above entitled, F. J. Kimball and Henry Fink were, on February 6, 1895, appointed receivers of said company, and on the same day the same parties were appointed auxiliary receivers in the Western District of North Carolina. No order was ever taken making the receivers parties to the suit of Hampton in the state court of North Carolina, but the same was prosecuted to judgment against the Norfolk & Western Railroad Company, the attorneys for which company had become the attorneys for the receivers. On May 9, 1895, the receivers above named reported to the court that the result of the operations of the Roanoke & Southern Railway for the three preceding years showed that the net earnings were insufficient to meet the annual interest liability of the bonds of that company, which were secured by a mortgage to the Mercantile Trust Company, of date March 16, 1892, and said receivers were, by order of court, directed to notify the lessor company and the trustee of their inability to pay the interest upon the bonds secured by said mortgage, or to comply with any of the obligations on the part of the lessee under the lease. Subsequently the trustee under that mortgage filed its bill for foreclosure, and the Roanoke & Southern Railroad Company was sold. The record in that proceeding is not before us, but it is stated in the brief of counsel for appellee, and does not seem to be disputed, that at such sale there was a large deficiency due upon the bonds secured by the deed of trust. The purchaser at the sale was the Norfolk, Roanoke & Southern Railway Company, which company subsequently conveyed to the Norfolk & Western Railway Company, a corporation which was organized after the sale of the Norfolk & Western Railroad Company in the proceedings above entitled. In the order of sale in the case of the Mercantile Trust & Deposit Company of Baltimore against the Roanoke & Southern Railway Company and the Norfolk & Western Railroad Company, its lessee, there was this provision:

"The purchaser shall, as part consideration of the railroad property and franchises purchased, take the same and receive the deed therefor upon the express condition that to the extent that the assets or the proceeds of assets in the receivers' hands, not subject to any other lien or charge, shall be insufficient, such purchaser, his successors or assigns, shall pay, satisfy, and discharge: (a) Any unpaid compensation which shall be allowed by the court to the receivers; (b) any indebtedness and obligations or liabilities which shall have been contracted or incurred by the receivers before delivery of possession of the property sold in the management, operation, use, or preservation thereof; and (c) also all unpaid indebtedness or liability contracted or incurred by the defendants, or either of them, in the operation of said railroad and property sold, which is prior in lien or superior in equity to said mortgage, except such as shall be paid or satisfied by the receivers, upon the court judging the same

to be prior in lien or superior in equity to said mortgage, and directing payment thereof."

On July 31, 1897, the petitioner filed a petition asking that he be permitted to issue an execution against the property, franchises, and effects of the Norfolk & Western Railway Company, the purchaser. This intervention was dismissed October 29, 1898. In the opinion in that case, reported in 90 Fed. 176, the Circuit Judge says:

"The question in this case is this: Is this judgment held by the intervener a liability incurred in the operation of the railroad and property sold, which is prior in lien and superior in equity to said mortgage? There can be no doubt that if the suit of Hampton had been brought against the Roanoke & Southern Railway Company, the mortgagor, and the judgment had been obtained and entered against that corporation under section 1255 of the Code of North Carolina, the judgment would have been preferred to the mortgage debt. * * * But the judgment was obtained in a suit against the lessee of the Roanoke & Southern Railway Company, in which suit it was not a party on the record. The rule is well established in North Carolina that the lessor of a railroad is responsible for the negligent acts of his lessee in operating a railroad. The sovereign power has clothed the lessor with certain franchises and ·privileges. These involve responsibility to the sovereign for their proper exercise, and this responsibility can neither be evaded nor lost by shifting its exercise on another by lease or otherwise, and, if the Roanoke & Southern Railway Company had been the defendant or one of the defendants in the suit, it could have been held responsible. Does the judgment against the lessee operate also against the lessor and create a liability? The case of Logan v. Railway Company [116 N. C. 940, 21 S. E. 959], and all the other cases in this line, proceed upon the idea that the lessee is the agent of the lessor in discharging its duties to the public, and that so the principal is responsible for the acts of its agent; but it can scarcely be contended that a judgment against the agent alone can be enforced as a judgment against the principal. It may afford conclusive evidence in a suit against the principal, may without doubt lead to a judgment against him, but it cannot in itself operate as a judgment against him, nor would it sustain an execution against his property. Section 1255 of the Code of North Carolina is in these words: 'Mortgages of incorporate companies upon their property or earnings whether in bonds or otherwise hereafter issued shall not have power to exempt the property or earnings of such incorporations from execution. for the satisfaction of any judgment obtained in the courts of the state against such incorporation for labour performed, or for materials furnished such incorporation, nor for torts committed by such incorporation, its agents or employees, whereby any person is killed or any person or property injured, any clause or clauses in such mortgage to . the contrary notwithstanding.' The protection afforded by this section is to an execution for the satisfaction of any judgment obtained in the courts of the state against such incorporation, that is to say, the incorporation which has made a mortgage upon its property or earnings, whether in bonds or otherwise. This is a statutory remedy, and must be strictly followed. It is in derogation of the common law. Its purpose is to displace a vested lien, and either to annul or greatly vary the terms of the mortgage contract. It must therefore be strictly construed. In enforcing it, courts cannot add to the words of the statute and make them apply not only to executions upon judgments obtained against the mortgagor corporation, but also to judgments obtained against its officers and ·agents. So, were the object of this intervention to obtain payment out of the proceeds of sale of the Roanoke & Southern Railway Company, the judgment is not within the protected class."

Authorities are cited in the opinion to sustain the views above presented, and there was no appeal from the judgment dismissing the petition.

Inasmuch as, by the terms of sale of the Roanoke & Southern Railway Company, the purchaser became liable to pay all indebtedness or

liability contracted by said company or by the Norfolk & Western Railroad Company, its lessee, which was prior in lien or superior in equity to said mortgage, the decree dismissing the petition of the intervener decided that his judgment was inferior in lien to the mortgage securing the bonds, and that the purchaser at such sale took the property free of such lien. The appeal in this case does not impeach the correctness of that judgment. Having been entered October 29, 1898, and there being no appeal from it, it settled the question that the intervener had no lien superior to the mortgage upon any of the property of the Roanoke & Southern Railway Company, and, as the leasehold interest of the Norfolk & Western Railroad Company had been extinguished by the sale, there was nothing left in it upon which the lien could operate. The intervention of January 9, 1902, seeks to subject to the payment of this judgment any funds which came into the hands of the receivers of the Norfolk & Western Railroad Company in the main case. The intervener's claim arose prior to the appointment of the receivers, and therefore does not fall within that class of cases wherein courts direct payment for personal injuries as part of the running expenses of the railroad in their charge. Nor does it fall within the principle of those cases wherein, current earnings being used for the benefit of mortgage creditors before current expenses are paid, the mortgage security is chargeable in equity with the restoration of the fund which has been thus improperly applied to their use. His right to a lien, if it exists at all, must depend upon section 1255 of the Code of North Carolina. The judgment upon which the intervention rests is not against the receivers, but against the corporation for a tort committed prior to the receivership. There is a line of cases beginning with Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, wherein certain claims for supplies necessary to keep the railroad company a going concern, furnished within a limited period before the receivership, have been allowed priority, but we find no case wherein this extraordinary preference has been allowed to a judgment on a tort of the corporation committed before the receivership. It is unnecessary, therefore, to review these cases or to consider the principles upon which they rest. It follows that unless the intervener has a lien by virtue of section 1255, above cited, he is in no better plight than any other unsecured creditor of the Norfolk & Western Railroad Company. The learned counsel for the intervener, on page 3 of their supplemental brief, say, "We do not ask for any relief against the Roanoke & Southern Railway Company." It was precisely this company, as was clearly pointed out in the opinion and judgment of October 29, 1898, that was within the purview of section 1255, and, if his judgment had been obtained against it, such judgment would have had priority over any mortgage indebtedness. In abandoning any claim against it, it seems to us that he has lost all claim to priority by virtue of this section. The receivers made their final report and were discharged May 21, 1898, more than three years before this petition was filed; but it is contended that they had assets in their hands upon which this judgment was a lien, and that this discharge is no bar. It is impossible for us to say, with the record before us, what assets came into the hands of the receivers. The

finding of the court below upon this point is that at the date when this judgment was obtained, February 22, 1897—

"The lease of the Norfolk & Western Railroad Company had been displaced by the proceedings for the foreclosure of a mortgage prior to the lease, and that on the day the judgment was entered the whole property of the Roanoke & Southern Railway Company had for nearly six months been conveyed to another wholly distinct corporation, in whose property and earnings at the date of the judgment the Norfolk & Western Railroad Company had no interest whatever. There was therefore no property upon which this section of the Code could operate, over which the Norfolk & Western Railroad Company had given a mortgage, or in whose earnings it shared, and nothing which could be taken in execution. The record does not disclose any other property of the Norfolk & Western Railroad in North Carolina covered by mortgage to which section 1255 of the Code of North Carolina might apply. The only other property in North Carolina in which the Norfolk & Western Railroad Company had an interest—the Durham Division—like the Roanoke & Southern, was held under a lease from the Lynchburg & Durham Railroad Company to the Norfolk & Western Railroad Company subsequent to and subordinate to a mortgage of the lessor company. This mortgage was foreclosed in 1896, so at the entry of this judgment the Norfolk & Western Railroad Company had lost all estate and interest in the Durham Division and its earnings."

Here is a distinct finding of fact which is binding upon this court, unless it is shown clearly to be erroneous. The record is confessedly incomplete, but, so far as it goes, it sustains the conclusion of the judge below, and the case is before us upon an admission that the intervener has no claim against the Roanoke & Southern Railway Company upon which he was entitled primarily to his lien under the statute of North Carolina, and upon a finding of fact that the Norfolk & Western Railroad Company had no other property in North Carolina covered by mortgage to which section 1255 of the Code of that state can apply.

The case of Ex parte Hudson (C. C.) 61 Fed. 369, is cited as "practically on all fours with the case at bar," and as decisive of this case. In Hudson's case, which is also reported in 68 Fed. 758, 15 C. C. A. 651, the judgment was against the railroad company which had executed the mortgage. The tort complained of was committed about six months before the mortgage was recorded, and it was rightly held that the judgment was prior to the mortgage. In this case there is no judgment against the Roanoke & Southern Railway Company, the corporation which executed the mortgage, and, as was pointed out in the opinion dismissing the first intervention, already cited, if the judgment had been against the company it would have been entitled to priority, and priority was refused for that very reason. Bouknight's Case, 70 Fed. 442, 17 C. C. A. 181, 30 L. R. A. 823, and the other cases cited in the same connection, are clearly distinguishable from the case at bar, for the same and other reasons. The distinction is vital. Section 1255 of the Code of North Carolina, and like provisions in other state statutes, are in terms intended in aid of those persons who have obtained judgments against the corporations which execute the mortgage, and this intervener has no such judgment.

The judgment of the court below is affirmed.