## PITCAIRN et al. v. FISHER.

No. 10262.

Circuit Court of Appeals, Eighth Circuit.

July 22, 1935.

John N. Hughes, Jr., and Willis J. O'Brien, both of Des Moines, Iowa (N. S. Brown and Homer Hall, both of St. Louis, Mo., and Hughes, O'Brien & Hughes, of Des Moines, Iowa, on the brief), for appellants.

Donald D. Holdoegel, of Des Moines, Iowa (Allen Rolston, of Queen City, Mo., and Stipp, Perry, Bannister & Starzinger, of Des Moines, Iowa, on the brief), for appellee.

Before STONE and FARIS, Circuit Judges, and RAGON, District Judge.

FARIS, Circuit Judge.

This is an appeal by Pitcairn and Nicodemus, as receivers of the Wabash Railway Company, from an order of the United States District Court for the Southern District of Iowa, directing them as ancillary receivers, appointed by that court, to pay as an operating expense out of operating revenue, a judgment in favor of appellee in the sum of $3,000, plus interest and costs.

This judgment arose thus: Some 50 days before appellants were appointed receivers of the above railway company (hereinafter called Railway) by the District Court of the United States for the Eastern District of Missouri, the husband of appellee, then an employee of the Railway, was killed by the negligence thereof. After the appointment, on December 1, 1931, of appellants as receivers, by the court of primary jurisdiction, and on January 16, 1933, appellee obtained a judgment against the Railway alone, for the said sum of $3,000, plus costs in a state court of Iowa.

Thereafter, and on January 21, 1933, appellee filed a claim in the court nisi, wherein she prayed that an order be entered against the receivers for the payment of her judgment out of any operating income in the hands of the appellants as receivers, or out of any property of the Railway in the state of Iowa. She based her right to such payment on sections 11606 and 11607 of the Code of Iowa, 1931.

Thereafter, and on December 24, 1934, appellee filed an amended or supplemental claim, wherein she set up an additional reason or ground for her demand for payment out of the assets in appellants' hands, to wit, that her judgment constituted an operating expense accruing less than six months prior to the receivership and, as such, was a preferred claim, which warranted and authorized payment to her prior to any and all liens on such assets.

The appellants, styling themselves simply "receivers," appeared and filed a pleading called a resistance to the making of the order prayed for by appellee. In this resistance appellants set up (1) that the Railway at the time of the rendition of the judgment in favor of appellee no longer owned the property against which appellee's motion for payment is directed, but by reason of the appointment of receivers long prior thereto such ownership had passed to and was then vested in appellants; (2) that the primary court, to wit, the United States District Court for the Eastern District of Missouri, alone has jurisdiction to order payment of all claims; and (3) that sections 11606 and 11607 of the Code of Iowa of 1931, have no application here, because said statutes create no lien prior to judgment, and the properties of the Railway had passed to appellants as receivers long prior to the judgment.

The trial court did not rule on the question, whether sections 11606 and 11607 of the statutes of Iowa applied; but, holding that the judgment in appellee's favor constituted an operating expense and was a preferred claim, ordered and directed the ancillary receivers to pay said judgment, costs, and interest forthwith out of operating revenue. Thereupon this appeal was taken by appellants, designating themselves merely as receivers and not ancillary receivers. The identical persons were in this case appointed receivers both by the court of primary jurisdiction and by the District Court of the United States for the Southern District of Iowa. Hence, there is much confusion in the record as to terminology, to which both appellants and appellee have largely contributed, in that the pleadings leading up to the making of the order complained of interchangeably refer to the appellants as receivers and ancillary receivers. This, as forecast, occurs repeatedly in the application or motion for the order here in controversy.

So, in limine, it is contended by appellee that this court has no jurisdiction to hear and entertain this appeal, because the order now up for judgment was entered against the ancillary receivers merely.

We are of the opinion that this contention of appellee should be disallowed. First, because appellee in her application, as also in her amended or supplemental application for the order, repeatedly designates appellants as receivers simply, and, second, because appellants, so far as con-

cerns the Southern District of Iowa, were the only receivers interested in that jurisdiction, and so the simple term receivers applies as well to them as ancillary receivers as it does to them as primary receivers.

It is rather obvious that since appellee repeatedly refers to appellants as receivers simply in making this contention she is guilty of inconsistency and in effect breaks down the bridge on which she herself must cross. She ought not to be heard to complain of the inexactitude of mere terminology when she herself in her application for the order complained of, and as admitted by her counsel in argument, first brought into the case the alleged error of which she now complains. Moreover, unless the word receivers shall be held to mean the receivers of the properties of the Railway situate in the Southern District of Iowa, appellee is placed in the anomalous position of praying for an order against the receivers simply, and here relying on an order made against the ancillary receivers. She should not be permitted to take advantage of an error, if it should be one, which she herself induced.

The errors relied on by appellants are five in number. These may readily be reduced to two, or three at most. These are: (a) That the trial court erred in holding, that jurisdiction was vested in it, and not in the District Court for the Eastern District of Missouri, to order the payment of claims against the Railway; (b) that the court erred in refusing to say that sections 11606 and 11607, Code of Iowa, 1931, are not applicable to this case, and to rule that said sections do not serve to create a lien against the properties in the hands of the appellants; and (c) that the court erred in holding that the judgment of appellee is an operating expense, and that it is a preferred claim superior to the lien of recorded mortgages, and therefore presently payable in full, with interest and costs.

As to the contention of appellants that the court erred in refusing to hold that sections 11606 and 11607, supra, do not apply to the situation at bar, it is doubtful whether this question is before this court. No finding was made on it in any way, so it can hardly be held to be an error of the trial court. Touching it the court nisi simply said that it "is not determined at this time." Counsel referred to it in argu-

ment, but they have not briefed it. The simple situation was that the court nisi rested his decision in the case on the single question whether the judgment claim of appellee is a preferred claim, for that it is an operating expense of the receivers. Since his conclusion on the latter point disposed of the case and warranted, as he deemed, the order of payment appealed from, he declined to pass in any wise on the effect, if any, of the above statutes.

■ Therefore, it seems plain to us that the case may be fully disposed of here by a consideration of the one question, whether the judgment rendered in favor of appellee constituted a preferred claim, for that the casualty on which it was bottomed occurred within six months of the receivership. It was urged in argument that there is no evidence in the record of the existence of debts secured by mortgages, because no evidence was heard. The latter fact is true, but in making the contention counsel for appellee overlook the fact that the record which was before the trial court shows these mortgages, and of this record the trial court takes judicial notice. St. Louis, etc., Ry. Co. v. Byrnes (C. C. A.) 24 F.(2d) 66; Franz v. Buder (C. C. A.) 34 F.(2d) 353; The Golden Gate (C. C. A.) 286 F. 105; Freshman v. Atkins, 269 U. S. 121, 46 S. Ct. 41, 70 L. Ed. 193.

It must be conceded, of course, that if appellee's claim is a preferred one, for that it is an operating expense, the properties were taken over by appellants saddled with such lien as a preferred claim entails. So, the single test of the goodness of the contention made is whether the accrual of the cause of action within 50 days of the receivership made this claim an expense of operation. No prior judgment is involved, and it may be assumed arguendo that such a judgment would constitute a lien.

■ We are unable to avoid the conclusion that the claim of appellee is not an expense of operation, and that her claim therefore is not a preferred claim. Counsel for appellee frankly concede that it would not be a preferred claim, but a general claim only, save for the fact that appellee's decedent was an employee of the Railway, who was killed in the line of duty, within six months of the receivership.

It seems to us that the case of Veatch v. American Loan & Trust Co. (C. C. A.) 79 F. 471, loc. cit. 474, settles this conten-

652

tion against appellee, unless the above case is to be overruled, and we see no valid reason for overruling it. As we read the above case, two employees of the railroad, called in the opinion the Denver & Gulf Company, were killed by the negligence of said company on the 27th day of July, 1893; thereafter, in an action to foreclose a mortgage, and in the month of October, 1893, receivership ensued. Nevertheless, this court said (in an opinion by Thayer, C. J., in which Sanborn, C. J., and Lochren, D. J., concurred) this: "In so far as the interveners' claims for allowances against funds in the hands of the receiver are based on the first ground above stated ['that the claims on which the judgments were founded accrued within a period of 90 days before the Denver & Gulf Railway first passed into the hands of a receiver, the claims should be treated as ordinary operating expenses and paid in preference to the mortgage bonds'] they are concluded by the decision of this court in St. Louis Trust Co. v. Riley, 36 U. S. App. 100, 16 C. C. A. 610, 70 F. 32, and the order applied for must be refused. We held in that case, after a review of all the decisions, that a claim for damages for personal injuries which were the result of a negligent act of the mortgagor company, committed before the appointment of a receiver in a suit brought to foreclose a mortgage, is not a preferential claim, which is entitled to be paid out of the income or the corpus of the mortgaged property, to the exclusion of the mortgage debt. We are satisfied that the views expressed in that decision are sound, and fully sustained by the authorities cited. Without indulging in further discussion of the subject, therefore, we shall content ourselves with what was said in that case."

That this is the rule as to the status of claims for general torts, is settled beyond doubt. Appellee, as said, concedes this, and the cases settle it. St. Louis Trust Co. v. Riley (C. C. A.) 70 F. 32, 30 L. R. A. 456; Hampton v. Railway (C. C. A.) 127 F. 662; Penn. Steel Co. v. Railroad (C. C. A.) 216 F. 458; Atchison, etc., Ry. Co., v. Osborn (C. C. A.) 148 F. 606; Farmers' Loan & Trust Co. v. Northern Pacific R. R. Co. (C. C.) 74 F. 431. In passing, we may observe that the case of Hampton v. Railway, supra, seems to be an authority against appellee on her contention as to the applicability of sections 11606 and 11607, Code of Iowa, 1931,

not here otherwise discussed. It is of course, well-settled that there are classes of claims, which have come to be held as preferred when they arise within six months prior to receivership. See Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339; St. Louis, etc., Railroad Co. v. Spiller, 274 U. S. 304, loc. cit. 311, 47 S. Ct. 635, 71 L. Ed. 1060. In the main, such claims thus given preference are claims for labor, supplies, equipment, and improvements to the corpus, in the hands of the receivers. The preference thus accorded rests upon the view that the things furnished were necessary to the upkeep and preservation as a going concern of the properties; or that by the use of the things furnished there has been additional value given to the properties, so that the security has been augmented. These are, of course, cold legal reasons; but absent a statute, and there is none, such reasons must prevail.

So, it is too plain for argument, that an alleged preference for claims for damages for personal injuries, is bottomed on no better basis than sentiment, and such a consideration is not for the courts, when in the teeth of the existing law; but such things are for the Congress, which has power to make new laws or to change old laws. The court cannot change the law; it can only interpret it and announce it, or apply it to facts as the facts exist. So, too, it is clear, that there is no better reason in law for making a claim of an employee a preferred claim when it arises from a judgment for damages for negligence than there is for making the similar claim of a passenger preferred under the same circumstances. For in neither case does the accrual of the claim add one jot or tittle to the preservation of the property, or toward an increase of its value. In fact, it is in derogation instead of augmentation of value; it lessens it, instead of increasing it. Chicago & A. R. R. Co. v. United States & Mexican Trust Co. (C. C. A.) 225 F. 940; Pettibone-Mulliken Co. v. Guaranty Trust Co. (C. C. A.) 25 F. (2d) 948.

This identical view in a situation wholly analogous in principle has been taken by this court in claims for a preference made in a receivership proceeding by a corporate surety on a bond for appeal, wherein a judgment, entered before receivership supervened, has been affirmed, and thereafter paid by such surety. U. S.

Fidelity & Guaranty Co. v. U. S. & Mexican Trust Co. (C. C. A.) 234 F. 238, L. R. A. 1916F, 1067; McCray v. Central Trust Co. (C. C. A.) 28 F.(2d) 393.

The case of Bowen v. Hockley (C. C. A.) 71 F.(2d) 781, 94 A. L. R. 856, is urged and greatly relied on by appellee. This was a case wherein more than a year prior to receivership, the beneficiary had been awarded compensation for the death of her husband by the State Industrial Accident Commission of the State of Maryland. The award was made under the provisions of the Maryland Workmen's Compensation Act. It was for the sum of $18 per week, for a total of some 277 weeks. Under the award, payments had been made weekly, until the receiver was appointed. He refused to make further payments, and the beneficiary brought suit. The Court of Appeals of the Fourth Circuit held that such payments should be made pending the receivership. It was, however, pointed out in the opinion that there are three methods of securing payment of awards under the Maryland local law. First, insurance in the state accident fund; second, insurance by private corporate insurers; and, third, assumption of the risk by the employer, when seemingly amply solvent. In the Bowen Case, supra, a fourth method, seemingly deemed a compliance with the third method, was used. That is, a bond to secure the payment of all such awards was given by the employer. This bond it appeared was not sufficient to cover all outstanding awards, and the receiver of the employer was held liable.

No reference is made in the Bowen opinion to the Veatch Case, the Riley Case, both supra, or to any other case we cite above. In fact, the court took pains to distinguish the case from cases such as Fosdick v. Schall, supra, and the Spiller Case, supra, which apply the "six months' rule." Obviously, the six months' rule could not apply to the Bowen Case, and the court so held, because therein, while the date of the accident does not appear, the award had been made more than thirteen months prior to receivership. Clearly then, the Bowen Case rode off on a theory of insurance under the local statute, for the court designates the employer as a "self-insurer" under the third alternative above referred to.

We think the above facts are sufficient to distinguish the Bowen Case from the case at bar. But even if this were not so, then the Bowen Case is in conflict with the Veatch Case, decided by this court, and we must follow the latter, or overrule it. We are constrained to follow it on the principle of the thing, as well as on the rule stare decisis.

We think what has been said disposes of this case, and no necessity exists to consider other points raised by appellants. It follows that the case must be reversed and remanded, with directions to overrule the motion of appellee, and so it is ordered.