## CONTINENTAL CASUALTY CO. v. POWELL et al.

### No. 3984.

Circuit Court of Appeals, Fourth Circuit.

April 6, 1936.

Willcox, Cooke & Willcox and T. H. Willcox, all of Norfolk, Va., for appellant.

W. R. C. Cocke, of Norfolk, Va., Harold J. Gallagher, of New York City, Edward Duffy, of Baltimore, Md., Gordon M. Buck and Thomas O'G. FitzGibbon, both of New York City, Carlyle Barton, of Baltimore, Md., Theodore S. Garnett, of Norfolk, Va., Humes, Buck, Smith & Stowell, of New York City, Baird, White & Lanning, of Norfolk, Va., Davis, Polk, Wardwell, Gardiner & Reed, of New York City, and Hughes, Little & Seawell, of Norfolk, Va., for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a claim filed by the appellant, herein referred to as the claimant, in a suit in equity pending in the District Court of the United States for the Eastern District of Virginia, at Norfolk, in which suit receivers were appointed for the Seaboard Air Line Railway Company. A reference was had to a special master, who reported against the contention of the claimant, and upon exceptions the judge below, after a hearing, confirmed the special master's report in July, 1934. After a rehearing the judge filed an opinion in September, 1935 (Guaranty Trust Co. v. Seaboard Air Line Ry. Co., 14 F.Supp. 555), reaffirming his former conclusion and adopting the findings and conclusions of the special master as the findings and conclusions of the court. From this action this appeal was brought.

Under a written contract which was entered into in 1913 between the claimant and the predecessor of the Seaboard Air Line Railway Company, the claimant wrote policies of health and accident insurance for employees of the railway company, the premiums for which policies were obtained by periodical deductions by the railway company from the pay of its insured employees pursuant to orders from the latter authorizing such deductions. The railway company in turn paid the sum so deducted from the pay of the employees to the insurance company less 5 per cent. as its compensation for the services performed. The fourth section of the agreement between the claimant and the railway company provided that the railway company "does not guarantee such collections and assumes no liability therefor," and the fifth section provided that the insurance company "agrees to waive all claims against said first party by reason of the failure for any cause to make any payment as herein provided, and to release said first party from any liability therefor."

Under the arrangement with the claimant the railway company deducted the sum of $7,324.04, from the wages which were due its employees accrued prior to June 24, 1930. This sum the claimant has never received. In addition to these deductions, the railway company made other deductions from the wages of its employees accruing subsequent to June 24, 1930. Receivers were appointed for the railway company on December 23, 1930, at which time the railway company was, as shown by its books, indebted to the claimant for these sums, and between December 20 and December 22, 1930, drafts covering the entire indebtedness were mailed to the claimant. After the appointment of the receivers these drafts were not paid by the banks upon which they were drawn. The amount of these deductions after June 24, 1930, was made the basis of a claim by the claimant and was allowed priority and has been paid.

Two questions are involved: First, was the amount due the claimant from the rail-

way company entitled to a preference as being a trust imposed upon the funds in the hands of the receivers; and, second, was the claim one entitled to priority as having peculiar equities that called for an extension of the six months rule as applied to debts due from a railway company?

We agree with the judge below in his conclusion that the amount due the claimant was not impressed with any trust, express or implied, and that the relationship between claimant and the railway company was simply that of creditor and debtor. As pointed out by the judge below, the full amount originally due the employees was not "impressed with any trust, express or implied, that could follow and impress itself upon the part for which, under the contract, the railway company became debtor to the insurance company, and there is a total want of any element of wrongdoing connected with the case." Jennings v. United States F. & G. Co., 294 U.S. 216, 55 S.Ct. 394, 79 L.Ed. 869, 99 A. L.R. 1248; Old Company's Lehigh v. Meeker, 294 U.S. 227, 55 S.Ct. 392, 79 L. Ed. 876.

The railway company withheld from the wages, that it would otherwise have paid its employees, a certain amount and instead of paying the employees agreed to pay the amount so withheld to the claimant. The amount was not set aside in any particular fund and the account was carried on the books of the railway company as a debt due the claimant. We can find nothing connected with the transaction that in any way partakes of the nature of a trust relationship. The railway company simply owed the claimant a sum of money which it failed to pay as it failed to pay others of its creditors.

"There is a fiduciary relation between trustee and beneficiary; there is not a fiduciary relation between debtor and creditor." American Law Institute Restatement of Law of Trusts, vol. 1, §§ 2, 12.

We also agree with the judge below in his conclusion that there are no special equities sufficiently strong to prevent the operation of the six months rule against the claim. The six months rule, by long practice and the uniform decisions of the courts, has become clearly established as justifying the granting of a preference to certain debts of a railway company incurred within that period. This rule is discussed by this court in the case of Dictaphone Sales Corporation v. Powell et al., 77 F.(2d) 795, and authorities are there cited with respect to it. It is evident that some time limit must be fixed within which the rule of preference would operate and six months has been established as the proper period. In exceptional cases and under extraordinary circumstances the rule has very rarely been extended to operate beyond the six months limitation, but here there are no circumstances that would justify the extension of the time. In addition to this, the matter is one addressed to the discretion of the receivership court (Union Trust Company v. Morrison, 125 U.S. 591, 8 S.Ct. 1004, 31 L.Ed. 825), and here the court has exercised that discretion, we think, properly.

It is contended on behalf of the claimant that the drafts drawn and delivered to it constituted equitable assignments pro tanto of the funds in the banks at which said drafts were made payable. We are of the opinion that this contention is not sound. The drafts were drawn on the treasurer of the railway company and were made payable at certain banks. While the custom was for the banks to pay such drafts on presentation, they did so relying on the treasurer of the railway company for reimbursement. Before the drafts were presented to the banks where payable, the receivership had intervened. The banks refused payment and protested the drafts. The appointment of the receivers on the general creditor's bill had the effect of an equitable attachment in favor of all creditors. John Hetherington & Sons v. Rudisill (C.C.A.) 28 F.(2d) 713, 62 A.L.R. 377.

The relationship between claimant and the railway company was that of creditor and debtor; there were no circumstances that would extend the time limit as fixed by the courts under the six months rule; funds retained from the wages of the employees were intermingled with other funds of the railway company; and there was no equitable assignment of the funds in the banks.

For the reasons above given, the decree of the court below is accordingly affirmed.