LIBERTY MUTUAL INSURANCE COMPANY & ANOTHER *vs.*
HEALTH, WELFARE AND RETIREMENT TRUST FUNDS BOARD.

Suffolk.    March 11, 1960. — June 10, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& CUTTER, JJ.

*Health, Welfare and Retirement Funds. Retirement. Pension. Insurance,*
Group insurance.    *Words,* "Fund."

The health, welfare and retirement funds act, G. L. c. 151D, inserted by St. 1958, c. 655, § 4, did not apply to a plan whereby basic coverage under a group life insurance policy was furnished to the employees of a company at its expense, additional coverage was furnished to some employees at their expense, the company annually paid the entire premium to the insurer and made deductions from the salaries of the employees having additional coverage for the portions of the premium attributable thereto, and the company received the dividends and subsequently made an apportionment thereof among the contributing employees; and a regulation issued by the health, welfare and retirement trust funds board was invalid in so far as it purported to require compliance with c. 151D with respect to such plan.

BILL IN EQUITY, filed in the Superior Court on October 2, 1959.

The suit was reported by *Barron, J.*, without decision upon an agreed statement of facts.

*Richard C. Evarts, (John H. Doermann* with him,) for the plaintiffs.

*Leo Sontag,* Assistant Attorney General, (*William J. McCarthy* with him,) for the defendant.

WHITTEMORE, J.   This bill in equity for declaratory relief under G. L. c. 231A seeks to have determined whether a regulation issued by the defendant board (the board) under the purported authority of G. L. c. 151D, the Health, Welfare and Retirement Funds Act, inserted by St. 1958, c. 655, § 4, applies to the plaintiffs, and, if so, whether such regulation is valid.   Review of the regulation is authorized by the State Administrative Procedure Act, G. L. c. 30A, § 7.

The dispute arises out of an outstanding group life insurance policy, issued in 1927 by the plaintiff John Hancock Mutual Life Insurance Company (Hancock) to the plaintiff Liberty Mutual Insurance Company (Liberty) for the benefit of employees of Liberty.

Liberty gives to all its full time employees with over three months' service a basic insurance coverage under the Hancock policy the cost of which is paid solely by Liberty.   Certain employees may secure additional coverage under the policy by paying the extra cost themselves.   The whole premium for both types of coverage is paid annually in advance by Liberty and Liberty deducts every two weeks, from the salary of each employee who receives additional coverage, one twenty-sixth of the yearly premium required of that employee.   Adjustments between the companies are made in arrears to include new insurance and terminations.   Dividends on account of the policy are received by Liberty and deposited in its own general bank account and apportioned among the contributing employees at the end of the policy year.   More than twenty-five employees are covered in each category of insurance.

The statute (G. L. c. 151D), inter alia, imposes duties and prohibitions upon the "trustees," as defined, of certain "trusts," with penalties for violation.   Section 1 of the act reads in part as follows:

"The following words . . . as used in this chapter shall have the following meanings . . .

" 'Trust', all funds derived in whole or in part from contributions from employers or employees or both, and designed for the purpose of paying or providing for medical

196 341 Mass. 194

Liberty Mutual Ins. Co. *v.* Health, Welfare, & Ret. Tr. Funds Bd.

or hospital care, pensions, annuities, benefits on retirement or death or unemployment of beneficiaries, compensation for injuries or illness, insurance to provide any of the foregoing, or life insurance, disability and sickness insurance or accident insurance for the benefit of beneficiaries or their dependents.

" 'Trustee', person, board or committee charged with the overall management and administration of the plans under which funds of a trust are derived or for which such funds are provided . . . . If any such funds are operated as a corporation, the officers and directors thereof shall be trustees . . . ."

The board, established by G. L. c. 23, § 10D, inserted by St. 1958, c. 655, § 3, has under § 10E the power to issue such rules and regulations as may be necessary for the enforcement of c. 151D. In July, 1959, the board, purporting to act under such authority, issued a regulation, still in effect, which provides that the term "trust(s)" means inter alia "all funds of any kind, e.g. sums of money or other assets," and a "fund, plan, program or contract . . . whether or not . . . separately identified . . . or segregated in any way as involving a corpus or res in the usual sense . . . designed for the purpose of . . . providing . . . life insurance . . . ."

The regulation, if valid, applies to the Liberty-Hancock policy and plan. The statute, however, does not speak in these plain terms, and it must be construed. The issue is whether the words "all funds" are used in G. L. c. 151D, § 1, only in the limited sense of funds "separately identified . . . or segregated . . . involving a corpus or res," or in the broad sense asserted in the regulation.

The creation of a trust fund in the strict sense is one of the means by which provision is made by employers or employers and unions to pay welfare benefits and pensions. See *Lewis* v. *Jackson & Squire, Inc.* 86 F. Supp. 354 (D. C. W. D. Ark.), app. dism. 181 F. 2d 1011; Fourth In-

terim Report, Special Commission on Health and Welfare
Trust Funds in the Commonwealth, 1957 Senate Doc. No.
675, pp. 10–25; Curtis, Fundamentals and Terminology of
Pension Plans, Journal, Am. Soc. of Chartered Life Un-
derwriters, Vol. XIII, No. 3, p. 258 et seq., esp. pars. 2.01–
2.08, 4.01–4.02; Regulation of Employee Benefit Plans: Ac-
tivate The Law of Trusts, 8 Stan. L. Rev. 655. Trustees of
such a trust fund may purchase insurance to provide bene-
fits under the plan. See Fourth Interim Report, p. 9. Pen-
sion and welfare plans are often also, like the Liberty-Han-
cock plan, built about an insurance contract. See Fourth
Interim Report, pp. 25–29; Curtis, Fundamentals and Ter-
minology (*supra*), par. 2.08. The words "fund," "funds,"
"funding" and "funded" are used with reference to such
plans, without the connotation of "trust fund." In the
new and "peculiar vernacular . . . old words have been
made to do by attaching new meanings to them." Curtis,
Fundamentals and Terminology (*supra*), par 1.01. Thus,
"determining the level of contributions" is "a specific
method of funding." Biegel et al., Pensions and Profit
Sharing (2d ed.) c. 4, Pension Costs and Cost Experience,
Fellers, p. 144. The sum of contributions paid over to
the insurance company may be referred to as a "fund":
"[T]he insurance carrier invests the moneys collected
from the employer (and the employees in the contributory
plans) and earns interest on this fund." Sibson, A Survey
of Pension Planning, p. 17. "Full funding may be effected
either through a trusteed arrangement or an insurance
contract." Dearing, Industrial Pensions, p. 86.[1] The
Code of Ethical Practices with Respect to the Insuring of
the Benefits of Union or Union-Management Welfare and
Pension Funds, Natl. Assn. of Ins. Commrs. Proceedings,
1958, Vol. 1, pp. 183–188, § 2 (p. 184), defines "Welfare
fund" as "any program providing life insurance . . . under
a policy issued to the trustees of a . . . welfare fund, or to

[1] See Am. Law Inst., Basic Pension and Profit-Sharing Plans (Rice and
Schlaudt) pp. 62–64; Clark, Profit Sharing and Pension Plans, p. 104; Isaac-
son, Employee Welfare and Pension Plans: Regulation and Protection of Em-
ployee Rights, 59 Col. L. Rev. 96, 100.

a union as policyholder . . .," and "Pension fund" as "any corresponding program providing pension benefits . . . ." The special commission on occasion used "fund" in this broad sense. It said (Fourth Interim Report, p. 35), "We may further inquire into the insured-type fund, the trust-type fund administered by banks, and many other facets connected with this serious problem." Again on p. 9 of that report the commission said, "Many [plans] are contributed to by employees as well as by employers. Some are funded, others are on a non-funded pay-as-you-go basis. Some make provision for the payment of benefits by the purchase of insurance, while others undertake to pay benefits directly."

But it does not follow that the statute has used "fund" in this broad sense. We turn to its text. As noted above the statute says (§ 1) that it is concerned with trusts which are "all funds derived . . . from contributions." The trustees are those who administer the plans *"under which funds of a trust are derived or for which such funds are provided ."* "If any such funds are operated as a corporation, the officers and directors thereof shall be trustees." The required registration (§ 2) is of copies of the "trust indentures, contracts, corporate by-laws and any and all other documents creating or relating to the organization and operation of such trusts." The annual report (§ 3 [a]) must include *"the value of the fund* . . . [and] *the salaries and fees paid by or charged to the fund."* The board "may upon application to, and after notice to the trust, *with the approval of a judge of a probate court* . . . examine the books and records and *investigate the administration of any trust* . . ." (§ 3 [b]). By § 3 (c) certain payments "in connection with the solicitation, sale, service or administration of a *contract providing benefits for such trust"* are prohibited. 'If . . . the board finds that any trust has been depleted" by negligence or wrong it may by § 3 (e) "bring an action or intervene in an action brought . . . against the person, whether or not the trustee whose act or omission has caused such depletion . . . ." Penalties

are provided by § 5 for the embezzlement or misappropriation of "trust funds, securities or other property" (emphasis supplied).

All of this wording reads with precision as the regulation of a specific fund. Not all of it, particularly the words italicized above, fits as well the concept of regulating also such a resource or asset as an insurance policy.

The board says that the provisions of c. 151D which relate to insurance policies point to a broad meaning of "funds" in that statute. It is provided in § 3 (a) that " [i]f some or all of the benefits under the fund are provided by an insurance carrier . . ." the annual report shall contain information as to premium or subscription charges, number of persons covered, claims incurred and paid, dividends, commissions, service or other fees, and services rendered therefor, and retentions, by the insurance carrier. Section 3 (c) prohibits the receipt by persons in certain categories of any thing of value from an insurance company, agent or broker in connection with the solicitation, sale, service or administration of "a contract providing benefits for such trust," or such receipt "from such trust, . . . [dividends, rate credits and other policy adjustment excepted]." The making of such payments by insurance companies, agents and brokers is also prohibited. It is true that the abuses to which these provisions are addressed may arise in connection with any insurance policy for any pension plan, and be of the same significance however the funds to pay for the insurance are provided. Also it may be said that the "trust fund" construction of the statute will result in partial regulation arbitrarily applied. Thus, in this case, if the contributions were first paid to trustees, so that a pension trust fund were created, and payments periodically made to the insurance company, there would be regulation even on the strict construction for which the plaintiffs contend, while payments directly from the employer to the insurer would free the plan from regulation.[2] It does not follow,

---

[2] For discussion of abuses in connection with the purchase of insurance see 59 Col. L. Rev. 96, 103, 107–108.

200                                                   341 Mass. 194

Liberty Mutual Ins. Co. v. Health, Welfare, & Ret. Tr. Funds Bd.

however, that the opportunities for abuse and hence the need for regulation are as great where there is no independent trust fund, administered by separate trustees. The conclusion could have been that the plan for direct purchase of insurance did not require regulation. We think, therefore, that this argument is inconclusive.

The board relies also on the Federal statute which is referred to in the preamble of St. 1958, c. 655. It is there stated that the purpose of the act "is in part to defer the operation of . . . [St. 1957, c. 778, the precedent act] until similar federal legislation takes effect" on January 1, 1959. The Fourth Interim Report, 1957 Senate Doc. No. 675, pp. 31–32, took note of pending Federal legislation. The Federal act regulates employee welfare and pension benefit plans and expressly defines an "employee welfare benefit plan" in terms which are unquestionably inclusive of the Liberty-Hancock group policy.[3] We think that this, however, speaks against the board's construction of G. L. c. 151D. An intent to state a like or similar meaning would have tended to dictate similar wording.

The power in the board under § 7 of G. L. c. 151D to waive the requirements of the statute "[w]here a trust or its trustees . . . comply with the requirements of the law of any other state or of the United States" is not a significant aid to construction as, under the requirements of any construction, G. L. c. 151D will in many instances overlap those of the Federal and State statutes.

The wording of § 6 by which the statute is made inapplicable to "any retirement fund, plan or program or any health and welfare fund, plan or program" of public and certain other agencies is not such as to imply that except for the section the statute would apply to all such plans or pro-

---

[3] 29 U. S. C. (1958) § 302 (a) (1) defines "employee welfare benefit plan" as "any plan, fund, or program which is communicated to or its benefits described in writing to the employees, and which was heretofore or is hereafter established by an employer or by an employee organization, or by both, for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death, or unemployment." See also 29 U. S. C. (1958) § 302 (a) (2) for a corresponding definition of "employee pension benefit plan."

341 Mass. 194                                                        201

Liberty Mutual Ins. Co. *v.* Health, Welfare, & Ret. Tr. Funds Bd.

grams.   A dominant purpose to make a broad exclusion is sufficient to account for the wording used.   Indeed, the use of these words in this section adds emphasis to the omission to use such broad words in the definitions of the statute.

Section 5, in making it a crime to embezzle or misappropriate "trust funds, securities or other property entrusted to . . . [the] care or custody [of any trustee]," tends to suggest that the statute may apply to a "fund" which is not a strict trust fund.   The definition of "trust" to include "all funds" suggests the meaning "trust funds and other funds."   But we think these references are also inconclusive.

In the circumstances we examine the statutory history. The form of legislation which the commission first recommended was plainly a regulation only of the trust funds. 1957 Senate Doc. No. 690, Fifth Interim Report.   The proposed statute, summarized in the margin,[4] is reasonably described by the commission's opening statement that the

---

[4] "Section 1. . . . (a) 'Trust,' all funds derived in whole or in part from contributions by employers or employees or both, designed to create a class of beneficiaries or dependents of beneficiaries determined by the relationship of employer and employee.  (b) 'Trustee,' those persons having the right to administer funds . . . , by whatever title they are described in any document creating or providing for the management of the fund.  If any such funds are operated as a corporation, the officers and directors thereof shall be trustees . . . .  Section 2.  The trustees of all trusts . . . shall register such trusts with the director . . . .  If such documents . . . in the opinion of the director, make adequate provision for the investment and operation of the fund and the interests of the beneficiaries thereof, and for accounting of such funds . . . he shall approve them. . . .  Section 3.  (a) The trustees of any such fund shall file each year in the probate court . . . an account . . . [which] shall be in the form required for trust accounts . . . [and additional schedules shall show] the amount contributed by the employer or employers; the amount contributed by the employees; the amount of benefits paid; the number of employees covered; the salaries and fees paid by or charged to the plan or fund; to whom paid, in what amount, and for what purposes.  If some or all of the benefits under the fund are provided by an insurance carrier or service or other organization, such report shall include . . . [additional specified information]. . . . (b) The trustees of such funds shall not be required to file any bond in the probate court . . . .  (c) . . . The probate court may . . . appoint a guardian ad litem to represent beneficiaries of the trust . . . and may make such allowance for his services, payable from the trust fund, as it shall deem reasonable. . . . (d) The funds of all trusts on which an accounting is required by the provisions of this act shall be invested and administered in accordance with the prudent man rule . . . .  Section 5 (a) Any trustees . . . or other person who is convicted of embezzling or misappropriating health and welfare trust funds, securities or other property entrusted to his care or custody shall be . . . [penalties stated]."   1957 Senate Doc. No. 690, pp. 11–14.

proposed act was "for the administration and regulation of health and welfare trust funds."

There are statements in the Fourth Interim Report which unquestionably show that the need of regulating plans and programs as well as funds was recognized by the commission. The proposal for legislation as filed by the commission serves, however, to lessen the significance of these earlier statements. Also the report (pp. 32–34) appears to recognize the greater need of regulation of trust funds than of insurance plans.[5]

The statute adopted pursuant to the Fifth Interim Report (St. 1957, c. 778, § 2) was changed from that recommended so as to be more like c. 151D as now inserted by St. 1958, c. 655, § 4, but later comment by the commission suggests that it was continuing to think of the legislation as a regulation only of trust funds. In its Sixth Interim Report (1958 Senate Doc. No. 845) in the course of stating recommended changes· in St. 1957, c. 778, the commission said that the change in the definition of trustees (G. L. c. 151D, § 1) "is intended to designate as trustees the persons having the information required by the disclosure sections of the act, namely, *those persons having the over-all management of employee benefit plans as distinguished from those persons who are simply charged with the administration of the funds refered to in the definition of 'trusts'"* (emphasis supplied) (p. 8). The definition of trust is the same in St. 1957, c. 778, § 2, and in St. 1958, c. 655, § 4.

The commission in 1958 proposed to eliminate § 3 (b) of c. 151D, inserted by St. 1957, c. 778. Section 3 (b) had provided that "trustees . . . shall be responsible in a fiduciary

---

[5] A criticism that insurance plans may not give proper assurance as to dividends has been met in a separate statute, St. 1959, c. 552, which inserts § 178E in G. L. c. 149, and reads as follows: "If a dividend is declared or a reduction in rate is made under any group insurance policy, the excess, if any, of the aggregate dividends or rate reductions under such policy and all other group insurance policies of the policyholder over the aggregate expenditure for insurance under such policies made from funds contributed by the policyholder, or by an employer of insured persons, or by a union or association to which insured persons belong, including expenditures made in connection with administration of such policies, shall be applied by the policyholder for the sole benefit of insured employees or members."

capacity for all money, property, or other assets received, managed or disbursed by them . . . . If in any trust indenture or other related document there shall be a provision exempting a trustee from the duty to use good faith or due care in administering the trust such provision shall be void.'' The commission's reason for recommending the deletion of § 3 (b) was that the new § 8 "provides that trustees must comply with other applicable laws of the Commonwealth, and section 3 (b), set forth in . . . [St. 1957, c. 778] was intended to confirm the application to trustees as defined of the same principles which govern the administration of Massachusetts trusts in general, [and therefore] the commission now considers section 3 (b) . . . unnecessary . . . .'' 1958 Senate Doc. No. 845, p. 9.

The words '' 'Trust,' all funds'' were, as noted, in the first draft act. 1957 Senate Doc. No. 690, p. 11. Attempts to cause the Legislature to be more specific, either by expressly including life insurance contracts or explicitly excluding from the operation of the proposed statute agencies subject to regulation by the commissioner of insurance, failed.[6] As the commission did not comment on these pro-

---

[6] Among the bills filed in 1958 seeking amendment of c. 151D as enacted by St. 1957, c. 778, § 2, which were referred to the special commission was 1958 Senate Doc. No. 503 which proposed to amend the definition of trust to read ''[A]ny fund established . . . to provide from monies in the fund, whether through the purchase of insurance or annuity contracts or otherwise, benefits under an employee welfare plan; provided, such term shall not include any such fund where the trustee or all of the trustees are subject to supervision by any department of this commonwealth or any other state or the comptroller of the currency of the United States or the board of governors of the Federal Reserve System.'' 1958 Senate Doc. No. 502 proposed to define ''Fund'' as ''any trust fund or other fund established under a written instrument by an employer or employee organization, or both, designed for the purpose of paying or providing benefits [etc.].'' It was the proposal also that § 2 provide that ''[n]o fund . . . shall be established or maintained unless — (a) The fund, if a trust, is a qualified trust under section 401 (a) of the Internal Revenue Code of 1954, and is held by a corporate trustee . . . which is subject to audit . . . or (b) The fund, if not a trust, is part of a plan which meets the requirements of section 401 (a) of the Internal Revenue Code of 1954, and is held by a life insurance company which is subject to audit or examination by the commissioner of insurance; or (c) The fund complies with the registration and reporting requirements set forth in sections 3 (a) and 4 (a) hereof.'' Section 3 (b) would have provided that the trustees of funds required to register file with the board a certified copy of ''(i) The trust instrument or group annuity contract under which the fund was established . . . (ii) A specimen copy of each form of annuity or insurance contract issued under the fund; and (iii) The most recent determination letter issued by the

posed statutes it is conjectural whether these amendments were rejected because thought unnecessary or because deemed unwise.

Five other States have enacted similar legislation in this field.[7] No helpful construction has come to our attention.

Our conclusion is that, notwithstanding the broad use of the word "fund" in discussions of welfare and pension plans, there is insufficient showing in the statute or the legislative history of an intent to regulate such a plan as is disclosed in this record. Perhaps regulation was intended; if so, the intent must be more clearly shown. This can be done by simple express statements like those in the Federal and California statutes.

It would not help the board, we think, to say that Liberty is under a trustee's obligation in respect to the deductions from payroll or other sums which it obliges itself to pay. We intend no suggestion but note that the usual construction appears otherwise. *McKee* v. *Paradise*, 299 U. S. 119. *Continental Cas. Co.* v. *Powell*, 83 F. 2d 652 (4th Cir.). Restatement 2d: Trusts, § 12, comment j. Scott on Trusts (2d ed.) § 12.2, pp. 113–114. See *State* v. *Atlantic City Elec. Co.* 23 N. J. 259, 266–267. Compare *State* v. *United States Steel Co.* 12 N. J. 51. We think the statute is not addressed to regulating such fractional parts of an overall plan and

---

Internal Revenue Service with respect to the qualification of the fund, or of the plan of which the fund forms a part . . . ." 1958 Senate Doc. No. 502, pp. 2–4. 1958 Senate Doc. No. 513 would have expressly made c. 151D inapplicable to any "trust of which all the trustees are . . . subject to supervision or regulation by the commissioner of banks or the commissioner of insurance . . . ."

[7] California: Rees-Doyle Health and Welfare Program Supervision Act, St. 1957, c. 2167, § 1 (Insurance Code, § 10641), "All health and welfare programs." Connecticut: Conn. Gen. Sts. (1958 Rev.) c. 559, § 31–78 (a), "any trust fund . . . to provide from moneys in the fund, whether through the purchase of insurance or annuity contracts or otherwise." New York: Laws of N. Y. (1956) c. 774, § 37–a, "any trust fund or other fund established or maintained jointly . . . to provide employee benefits, by the purchase of insurance or annuity contracts or otherwise . . . ." Washington: Laws of Washington, Extraordinary Session, 1955, c. 8, § 1 (2), "any fund . . . for providing . . . [benefits and services] whether . . . to be paid directly from such fund . . . or paid under contracts entered into by the trustees of the fund with an insurer or health care service contractor." Wisconsin: Laws of Wisconsin, § 211.02 (1), "any trust fund or other fund established or maintained jointly . . . whether directly or through trustees, to provide employe benefits, by the purchase of insurance or annuity contracts or otherwise."

does not by its terms or implication make a plan or a program into a defined "fund" because at some stages the employer, not holding any segregated fund, may be under a fiduciary duty in respect of payments it has contracted to make.

A fund or a trust fund may include an aggregate of miscellaneous assets. We think it is often so used in trust instruments. Compare *Salter* v. *Salter,* 338 Mass. 391, 393. Undoubtedly an insurance policy could be an asset of a trust fund. Indeed, the definition of the statute, with the interpolation of the word "or" at one point, could be read to define an insurance policy as a trust. In the following repetition of the definition we add also two letters as an aid to reading: " 'Trust,' [a] all funds derived in whole or in part from contributions . . . and designed for the purpose of paying or providing for . . . care, pensions, annuities, benefits on retirement or death or unemployment of beneficiaries, compensation for injuries or illness, [or] insurance to provide any of the foregoing, or [b] life insurance, disability and sickness insurance or accident insurance for the benefit of beneficiaries or their dependents." The board does not urge this construction and the inability, sensibly, to read "insurance policy" in place of "fund" or trust" at some places in the statute speaks effectively against it.

The Liberty plan is an aggregate of contractual obligations to make deductions and pay money and an insurance policy. That aggregate is not a fund designed to pay for or provide insurance.

A decree is to enter in the Superior Court construing the statute as inapplicable to the Liberty–Hancock contract and plan, and the regulation invalid so far as it purports to require compliance with the statute in respect of such contract and plan.

*So ordered.*